## M. S. Cox v. The State.

No. 579.   Decided November 9, 1910.

Motion for Rehearing Denied, December 7, 1910.

**1.—Murder—Evidence—Insanity—Expert Opinion.**

Where upon trial of murder, defendant's witness had not qualified himself on the facts to express an opinion as an expert as to the sanity or insanity of defendant, there was no error in sustaining the State's objection to the same; besides the bill of exceptions was not in proper shape to bring the matter before the appellate court.

**2.—Same—Charge of Court—Cooling Time—Manslaughter.**

Upon trial of murder, where the evidence showed that the deceased had made an attack on the defendant some fifteen or twenty minutes before the homicide and that defendant became much excited and enraged and afraid of his life, there was no error in the court's charge on manslaughter to submit the issue of cooling time therein.

**3.—Same—Charge of Court—Weight of Evidence.**

Where, upon trial of murder, the court in submitting his charge on insanity informed the jury that a mere weakness of mind would not excuse an act that would be otherwise criminal, where the defendant could discriminate between right and wrong, there was no error.

Appeal from the District Court of Ellis.   Tried below before the Hon. F. L. Hawkins.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The State's testimony showed that defendant entered the frosty joint, took a pistol from the shelf under the counter and walked up to deceased behind the counter within three or four steps and shot him down; that deceased was doing nothing at the time, and was

talking quietly to a third party; that defendant approached from the side and shot deceased; that nothing was said at the time. There was also testimony by the State that just before the killing defendant threatened to kill deceased, and started for the frosty joint.

The defendant testified that some fifteen or twenty minutes before the killing deceased had abused him, and charged him with circulating false reports about deceased about selling whisky and robbing people; that deceased took defendant by the throat and shook him and said he was going to show him what he would do with him; that he had several people afraid of him; that defendant should get a gun and deceased would get one and they would settle it, etc.; that defendant became excited and afraid of deceased; that after deceased left, defendant went to the frosty joint to get his coat, and while there deceased backed towards him as if to draw a gun on him, and that then defendant reached for the pistol on the shelf and fired upon deceased; that it was dark in the room, and that one of the State's witnesses was blocking the entrance, etc. There was also testimony as to the insanity of defendant, etc.

*Supple & Harding* and *John H. Sharp* and *W. P. Hancock,* for appellant.—Upon question of expert opinion of witness: Williams v. State, 37 Texas Crim. Rep., 348, 39 S. W. Rep., 687.

Upon question of cooling time: Thomas v. State, 56 S. W. Rep., 70; Bashfield's Instructions to Juries, vol. 2, sec. 1507; Scott v. Com., 23 S. W. Rep., 219.

On the question of charge on weight of evidence: Willis v. Strickland, 50 S. W. Rep., 159.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of manslaughter, his punishment being assessed at five years in the penitentiary.

1. Appellant's first complaint is that the court erred in not admitting the testimony of Dr. Spivey as to his opinion of the mental responsibility of appellant, and refers us to page 22 of the statement of facts for his bill of exceptions. Referring to the statement of facts, which is at the close of Dr. Spivey's testimony, we find this language: "The court sustained the objection of the State to defendant's counsel asking the witness whether or not in his opinion, from his observation of him, defendant, his conduct and his actions at that time he was sane or insane, on the authority of Wells v. State, 98 S. W. Rep., 851, and Williams v. State, 39 S. W. Rep., 687." The latter case will also be found reported in 37 Texas Crim. Rep., 348. Just what part of Dr. Spivey's testimony appellant relied upon as a predicate for his opinion that he, appellant, was insane, is not shown. In one part of the testimony Spivey stated appellant was

acting like a maniac. On objection of the State this was excluded. Following this on the same page, further testifying, Spivey stated that appellant was acting like a maniac. This went before the jury without objection so far as the statement of facts is concerned. While a bill of exceptions may be included in a statement of facts, yet it must be put in such form that the court will readily see the matter sought to be presented and its connection. The court will not look through the entire statement of a witness in order to find matters where it is contended same ought to have been admitted or rejected, but even if we should do so, we are of opinion the court's ruling was not error. Spivey was not familiar with appellant; had only seen him two or three times, and had never noticed anything wrong with him except on this occasion. He says upon this occasion he seemed to have been very much excited, and was crying, and complained that the deceased Page had made an assault on him a few moments before and struck him. This is practically the testimony of this witness bearing upon the question of insanity. We are, therefore, of opinion that there was not sufficient evidence to authorize the witness to give his opinion as to the sanity or insanity of appellant.

2. The third and fourth assignments of error complain of the court's refusal to give the fifth and sixth special instructions requested by appellant. The motion for new trial asserts that these charges correctly stated the law on the subject of manslaughter, eliminating what he contends is vice in the general charge, that is, cooling time. The question of cooling time is in the case under appellant's testimony. He testified that about fifteen or twenty minutes before the shooting that deceased grabbed him in the breast and shook him around. He says: "I told him he was mistreating me. He struck me two or three times. I begged him to let me loose; I didn't feel that I had mistreated him. He said he didn't want none of my argument; that he had all the information he wanted, about what I had been telling. He would not let me talk about it. He accused me of telling that he and Mr. Creech had robbed Sam Woods and selling whisky. He said that Mr. Creech had told him that I was telling everybody, strangers coming around there and was going to get them in trouble. He told me that he was ready to show me who Mr. Page was; that several around there was afraid of him, and he said he fought his last time with his fists and would not bruise his fists any more. I begged him to go home and let me alone. He said he would go and he would go and get him a gun and for me to go get me one, and we would settle this; said he would give me a fair chance, and for me to get a gun, that he was going to get his. He left me. I don't know where he went. I stayed around the yard there, I suppose. He got me scared of him and thought he was going to kill me. I was afraid he was—he said he was. He had been drinking. I had been sick all that fall and I was sick that day." This occurred something like fifteen or twenty minutes before

appellant shot and killed deceased Page. We are of opinion that this suggested the issue of cooling time. Under the State's theory of the immediate facts of the killing Page was shot while he was doing nothing, just standing by the counter on one side and appellant on the other; that appellant got a gun from under the counter and shot Page in the head, back of the right ear. From the State's standpoint, eliminating these antecedent matters which appellant claimed enraged his mind and made him afraid of Page, the issue of manslaughter was hardly in the case. If deceased Page made the attack on him fifteen or twenty minutes before the homicide which appellant speaks of, and he thereby becomes very much excited and enraged and afraid of his life, 'and it would have reduced the killing to manslaughter had it then occurred, the issue of cooling time was in the case if he killed for that reason fifteen or twenty minutes afterwards. There would have been error for which appellant might have justly complained had the issue of cooling time not been given, provided he had been convicted of a higher offense than manslaughter. The court's charge in this connection is further criticised, because in submitting the issue of manslaughter, under the attendant circumstances, as stated in the charge, each charge given by the court was qualified and limited by cooling time. It is contended that appellant was entitled to a charge on manslaughter without the limitation of cooling time, conceding that it was in the case. Had appellant been convicted of murder of either degree this matter might have become more or less serious, but having been convicted of manslaughter, we are of opinion that there is no sufficient warrant for us to hold it materially injurious. Crews v. State, 34 Texas Crim. Rep., 533. Cooling time in this case bore upon the issue of manslaughter, and it was given in order that the jury might intelligently pass upon that issue. The jury were in effect told that if there was not sufficient cooling time, the homicide would be reduced from murder to manslaughter. The jury convicted of manslaughter, which, it occurs to us, gave appellant the full benefit of this issue, and there was no error in the court's charge, and none in refusing the special requested instructions.

3. The twenty-ninth section of the charge given by the court is attacked as being upon the weight of evidence wherein the court uses this expression: "Mere weakness of mind is no defense to crime, provided the party accused has sufficient reason to know the nature and quality of the act charged against him, and knew the difference between the right and wrong thereof." The court's charge fully presented the issue of insanity, conceding that the evidence raised that issue. The excerpt from the charge states a correct proposition of law. Nor does it assume that appellant was of weak mind. It only instructed the jury that mental condition would not be a defense to crime unless it reached the point of preventing the party from knowing the difference between the right and wrong of the act he

had committed. It does not assume nor inform the jury that appellant was weak-minded. It is a general limitation upon this issue of insanity, and informed the jury as a matter of law that mere weakness of mind will not excuse an act that would be otherwise criminal, and that weakness of mind must reach the stage that the party does not know the difference between right and wrong of the act committed. The charge on insanity is otherwise free from any character of criticism. We believe the charge is in consonance with our law as it has been enunciated by this court.

4. The evidence is ample to support the finding of the jury.

Believing there is no error in the record, the judgment is affirmed.

*Affirmed.*