WALTER TURNER v. THE STATE.

No. 772.   Decided December 21, 1910.

Rehearing Denied February 8, 1911.

**1.—Assault to Murder—Charge of Court—Insanity—Practice on Appeal.**

Where, upon appeal from a conviction of an assault with intent to murder, the defendant objected to the court's charge on insanity because the same required that insanity must be clearly proved, but did not interpose these objections in the trial court, the same could not be reviewed.

**2.—Same—Evidence—Insanity—Opinion of Witness.**

Where, upon trial of assault with intent to murder, it did not appear from the record on appeal that any or all of the witnesses to whose testimony the appellant objected in the court below had given any opinion touching his insanity, but simply stated the result of their observations which was that there had been nothing unusual in his deportment and nothing to indicate mental unsoundness, there was no reversible error. Distinguishing Williams v. State, 37 Texas Crim. Rep., 348; and Betts v. State, 48 Texas Crim. Rep., 522.

**3.—Same—Argument of Counsel—Requested Charge—Opinion of Counsel.**

Where, upon trial of assault with intent to murder, the State's counsel remarked that counsel for defendant, who had interposed a plea of insanity for their client, would no doubt deny such plea if their client was tried in the probate court on a complaint of insanity, whereupon defendant's counsel desired to state that they had advised the relatives of defendant that if the plea was found true in the trial of this case defendant would be confined in the Asylum for the Insane, but requested no special charge to withdraw State's counsel remarks, there was no reversible error.

**4.—Same—Misconduct of Jury—Practice—Impeaching Verdict.**

Where the motion for new trial alleged that the jury convicted the defendant because they believed that if he were acquitted he would probably harm someone else, and offered proof to support this motion, which the court overruled, there was no error.

**5.—Same—Newly Discovered Evidence—Diligence.**

Where there was no showing that any diligence was used to secure the alleged newly discovered testimony or that it could not have been discovered by the exercise of ordinary diligence, there was no error in not granting a new trial thereon.

Appeal from the District Court of Nacogdoches. Tried below before the Honorable James I. Perkins.

Appeal from a conviction of assault with intent to murder; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*V. E. Middlebrook,* for appellant.—On question of opinion of witness on issue of insanity: McLeod v. State, 31 Texas Crim. Rep., 331; Ellis v. State, 33 Texas Crim. Rep., 86, and cases cited in the opinion.

On question of argument of counsel: Pratt v. State, 53 Texas Crim. Rep., 281; Machen v. State, id., 115; Battles v. State, id., 203; Strong v. State, 52 Texas Crim. Rep., 133; Stevison v. State, 48 Texas Crim. Rep., 601; McKinley v. State, 52 Texas Crim. Rep., 182; Taylor v. State, 50 Texas Crim. Rep., 560; Holman v. State, 49 Texas Crim. Rep., 82; Jenkins v. State, id., 457; Davis v. State, 54 Texas Crim. Rep., 236; Smith v. State, 55 Texas Crim. Rep., 563.

On the court's charge on insanity: Hurst v. State, 46 S. W. Rep., 635; id., 50 S. W. Rep., 719; McCullough v. State, 50 Texas Crim. Rep., 132, 94 S. W. Rep., 1056; Johnson v. State, 42 Texas Crim. Rep., 87.

On question of misconduct of jury: Austin v. State, 42 Texas, 355; Hodges v. State, 6 Texas Crim. App., 615; Jack v. State, 20 Texas Crim. App., 656; Testard v. State, 26 Texas Crim. App., 260.

*C. E. Lane,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—On April the 25th of this year, in the District Court of Nacogdoches County, appellant was by a jury found guilty of assault with intent to murder, and his punishment assessed at confinement in the penitentiary for three years. From this judgment of conviction he has prosecuted an appeal to this court.

The evidence shows without dispute that on the morning of April 17, 1910, appellant, in the town of Nacogdoches, shot A. J. Spradley, sheriff of the county, in the back of the neck at a bakery shop where Spradley had gone to make some purchases. The assault was wholly unprovoked. Nor do we find in the record any apparently adequate motive for same. The defense in the case was insanity, and the evidence in the case, it seems to us, goes very far towards sustaining same. Indeed, if we were to judge from the record it would seem to us that the preponderance of the testimony was in favor of appellant's contention. However, this is not so manifest or conclusive as would justify us, in view of the finding of the jury and the action of the trial court in affirming the verdict, in setting aside the conviction on this ground. Having arrived at this conclusion, we have deemed it unnecessary to set out at length the facts further than to say the evidence of insanity was to our minds very strong. There was no complaint made of the manner in which the issue was submitted to the jury, nor is the charge of the court otherwise criticised in the motion for new trial. The submission of the issue was not in any respect complained of in the motion, though it is here urged that the court erred in instructing the jury that to establish the defense of insanity it must be *clearly* proved that at the time of committing the act the defendant was laboring under such defect of reason from disease of the mind as not to know the nature or quality of the act he was doing, or if he did know, that yet he did not know he was doing wrong; that is, that he did not know the difference between the right and wrong as to the particular act charged against him. In as much as this charge was not complained of in the court below, it clearly can not be the subject of review here.

2. The main ground assigned as error in this court, and one which is not wholly free from difficulty, relates to the action of the trial court in admitting the testimony of A. Y. Matthews, W. U. Perkins, K. P. Branch, Polk Roberts, John Ruschie, D. K. Cason, A. Y. Donegan, Chas. Perkins and Elmer Weaver, all of whom testified, in substance, that they had never noticed or observed anything peculiar about appellant's conduct or appearance or speech which would lead them to conclude that he was insane or of unsound mind. This was objected to on the ground that a non-expert witness should not be permitted to give his opinion as to the insanity of the defendant except from acts done by the defendant in the presence of the witness from which the witness forms his opinion, and there being no acts stated by these witnesses, they could not have had an opinion other than the appellant was sane at the times they testified about; that we naturally believe that all men are sane until they are proved to be otherwise, and the law holds them to be sane till by a preponderance of the evidence they are proved to be insane; that this was in effect the expression of opinion as to the sanity of appellant, and that from the manner of putting the question and the only answer the witnesses could give with

their knowledge and association with the defendant, was calculated to make the jury believe the witnesses thought and believed appellant to be sane when he fired upon Mr. Spradley, and was calculated to make the jury believe that these witnesses were of the opinion that he was sane and thereby prejudice the minds of the jury against him. The proposition submitted by appellant on this assignment is that "non-expert witnesses are not competent to testify as to the sanity or insanity of the defendant unless they state facts upon which they base their opinion." A question not unlike this has been before the court not infrequently. Among the very best considered cases in the books on this question is the case of Williams v. State, 37 Texas Crim. Rep., 348. The court there held that to render opinion evidence of non-professional witnesses competent, as to the sanity of a defendant, it must appear: 1. That the witness had adequate means of observation; that is, he must have had the opportunity of forming an accurate judgment as to the existence of insanity, considered with reference to its supposed character or degree. 2. He must first state what he personally knows of the party's sayings and doings indicating insanity. His testimony must show that such intimate and close relations existed between the alleged insane person and himself as fairly to lead to the conclusion that his opinion will be justified by his opportunities for observing the party. 3. He may state the facts, conduct, conversations and business transactions, give the look of the eye and the action of the man. 4. But, the opinion of a person not of the medical profession is not evidence, unless the facts upon which it is based have come under his own observation, and unless, also, he states those facts to the jury. An inspection of that case will show that after a predicate was laid touching their acquaintance with Williams, each of the witnesses was then asked by the State to give their opinion as to the sanity or insanity of the defendant, and that each of said witnesses answered that they considered him sane. This same question was before the court also in the case of Betts v. State, 48 Texas Crim. Rep., 522. In that case the decision in the Williams case, supra, was in terms approved. An inspection of that case will show that each of the witnesses, whose testimony was considered, was permitted to state, and did state, based on his observation of him, that he regarded the appellant as sane. In the later case of Wells v. State, 50 Texas Crim. Rep., 499, 98 S. W. Rep., 851, the rule in the Williams case, supra, is also approved, but the facts in that case show that the witnesses whose testimony was objected to were permitted to state and did state that in their opinion the defendant there was sane. The question here presented is somewhat different. All these witnesses testified to their acquaintance with appellant. As to some of them, the proof shows the acquaintance was intimate and had existed over a period covering many years. The acquaintance of others of them was neither so intimate nor did it cover such a great length of time. In this case their testimony went only to the effect that they had never noticed or observed

anything peculiar about appellant's conduct or appearance or speech that would lead them to conclude that he was insane or of unsound mind. This is but another way of saying that during their acquaintance with him appellant's demeanor, conduct, speech, employments and mode of life were normal, not marked by peculiarities, outbreaks, idiosyncrasies, extravagance of deportment or other characteristics out of harmony with a normal man. Impliedly it may be said to have amounted to a declaration of facts which would be proof of sanity. It was not necessarily a mere opinion but rather a statement of the facts from which the jury might and would form their own judgment as to appellant's sanity. It occurs to us that in an inquiry involving the question of one's sanity, that it ought always to be permissible for any witness, professional or non-professional, to state each and every fact proper to be considered in determining the question of insanity. If one's relation with the subject of inquiry was intimate, his opportunities for seeing him frequent, his acquaintance of long duration, it would be a matter of prime importance in determining the question of insanity to ascertain from such witness what had been the deportment, conduct, employment, manner of speech, habits and all of his traits and demeanor which would be proper to be considered in arriving at the truth of the issue. It must evidently have been on this theory that this testimony was admitted. It will be noticed that it does not appear from the bill of exception, nor does it appear from the statement of facts, that any or all of these witnesses had given any opinion touching appellant's sanity at all. They only stated the result of their observation, and that the result of this observation was that there had been nothing unusual in his deportment and nothing to indicate mental unsoundness. We think that the rule laid down in the Williams case ought not to be carried to the limit and extent of denying the State, or in a given case, the defendant to produce testimony such as permitted in this case, and that the court did not err in permitting the inquiry along these lines.

3. The next question complained of the argument of the district attorney. It appears from the bill of exceptions that during his argument the district attorney said, in substance, that if appellant had been put on trial in the Probate Court on a complaint of insanity, and a jury had been summoned to try him to send him to the asylum for the insane, his counsel would have been there as stoutly defending him against the charge and keeping him from the insane asylum, and asserting his sanity there as stoutly as he is asserting his insanity here. To this statement counsel for appellant objected, and asked the court to require the district attorney to confine himself to the record, and to instruct the jury not to consider the argument. Thereupon it appears the district attorney said that, it was a deduction and he had the right to make any deduction that he saw proper. Thereupon counsel for appellant, so the bill recites, asked from what evidence he drew the deduction, and the court, without waiting for an answer from the

district attorney, replied to counsel for appellant that the district attorney had the right to make any deduction he saw proper in his argument to the jury. Thereupon counsel for appellant asked the court the privilege of making a statement to the jury in as much as the State had the closing of the argument, and was making an argument that could not be based upon the record. Thereupon the court replied to counsel for appellant that he could have his bill of exception and include in it the statement that he desired to make to the jury. The bill recites that the statement which counsel desired to make was to the effect, in substance, that he had advised the relatives of appellant, including his wife and brothers who had employed him, that he should be confined in the asylum for the insane, if the statements as to his condition were true, and that if the jury in this case found him not guilty, a complaint must be filed against him charging him with lunacy, or he would not take the case, and that his wife and brothers agreed to this, and that complaint should be filed against him before he was released from custody in case he was found not guilty. The exception is sufficient to cover the objectionable argument as well as the refusal of the court to permit counsel for appellant to make the above statement to the jury; and because it was proper for the jury to have heard what appellant's counsel had to say in reply to the accusation so as to correct the erroneous impression that the district attorney must have made upon the minds of the jury. Appellant also excepted to the remarks of the court that the district attorney had the right to draw any deduction he saw proper in his argument, because such remarks were calculated to lead the jury to believe and likely did lead the jury to believe that there was evidence from which to draw such deductions, and thereby prejudice the rights of appellant before the jury. It will be observed that this exception contained and embodied a request to the court to instruct the jury not to consider the remarks of the district attorney. An examination, however, of the record shows that no such instruction in writing was requested. Ordinarily, before we would reverse any case on account of an improper argument, it is incumbent on counsel to request a proper instruction covering such improper argument. We think, notwithstanding the verbal request of counsel made at the time, that in order to make this objection effective, that he should have requested in writing a special charge covering the point. It may be in this case that counsel for the State did an injustice to counsel for appellant; assuming counsel's statement to be correct, which we have neither the right nor any reason to question, it would seem he had done so, but we think it will be rarely found where in any case a conviction has been set aside for such banter and reference to the personal opinions and attitude of counsel in cases. We think it wholly unlikely that any jury would have been seriously moved or affected by this reference. They would have been inclined to think that counsel for the defendant as well as counsel for the State were partisans of their respective sides, and diligent and zealous for their respec-

tive sides of the case. The statement contained no appeal to any matter that would ordinarily have affected the jury. It was not inflammatory, nor did it contain any statement of fact touching the case or touching appellant's guilt. While such references are to be deprecated, the argument is not of sufficient gravity to justify a reversal of the judgment.

4. After the verdict was brought in counsel filed a motion for new trial on the ground, among other things, that the jury had been guilty of grossly improper conduct in that they in fact believed appellant to be insane but were unwilling to acquit him because they apprehended and believed that if acquitted he probably would hurt or kill some one else, and for this reason were unwilling to and refused to bring in a verdict in accordance with their convictions, but returned one finding appellant guilty. Proof was offered in support of this motion, and the court was asked to have the jury sworn and hear evidence on the question. This the court very wisely and properly declined to do. It would be manifestly against public policy to permit an inquiry such as this, or, to permit jurors to impeach their verdict as was here attempted to be done.

5. Nor is there any merit in the motion for rehearing based on newly-discovered testimony. It may be conceded that this testimony was valuable, relevant and important. There is, however, in the motion no showing of what, if any, diligence was used to secure this testimony, nor is there any statement, in terms, that it could not have been discovered by the exercise of ordinary diligence.

We have been reluctant to affirm the case, and yet a careful review of the record has not disclosed to us any ground on which, as a matter of law, we would be justified in reversing it.

Finding no error in the record, it is ordered that the judgment of conviction be and the same is hereby in all things affirmed.

*Affirmed.*

McCord, Judge, absent.

### ON REHEARING.

#### February 8, 1911.

PRENDERGAST, Judge.—We have carefully considered the record in full in this case, the motion for rehearing and the able and forcible argument of the appellant's attorney for a rehearing. We have no doubt as to the correctness of the affirmance of this case. Our study of it has not had the effect to raise any doubts in our minds, as was expressed by the previous opinion, of the correctness thereof. We deem it unnecessary to take up and rediscuss the questions again. The motion is overruled.

*Overruled.*