## Matthew Thomas v. The State.

No. 8483.   Decided October 8, 1924.

Rehearing denied November 12, 1924.

**1.—Rape—Evidence—Unsound Mind—Non Expert Witnesses.**

This is a case of rape on a woman forty-seven years of age whom the prosecution charged was so mentally diseased at the time, as to have no will to oppose. A number of witnesses testified over appellant's objection as to her mental unsoundness. None of these witnesses qualified as medical experts. Appellant reserved proper bills of exceptions to all of said testimony. None of these witnesses detailed any act or circumstance upon which their opinion was founded. This testimony was improperly admitted. See collation of authorities in the opinion.

**2.—Same—Evidence—Diseased Mind—Appellant's Knowledge of.**

The prosecution introduced a confession of appellant, admitting the act of sexual intercourse, but denying that he had knowledge at the time, of the diseased condition of her mind. It was incumbent on the state to prove this element of the offense, by competent evidence. Such knowledge on the part of the accused is not provable by opinion testimony.

**3.—Same—Evidence—Burden of Proof—Exculpatory Confession.**

Where the state introduces in evidence a confession of the accused containing exculpatory declarations, the burden is on the state to prove the falsity of such declarations. See Pharr v. State, 7 Tex. Crim. App., 472 and other cases cited in the opinion.

Appeal from the District Court of Lee County. Tried below before the Hon. R. Y. Alexander, Judge.

Appeal from a conviction for rape; penalty, ninety-nine years in the penitentiary.

*E. T. Simmong,* and *W. C. Thompson,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, Presiding Judge.—Rape is the offense; punishment fixed at confinement in the penitentiary for a period of ninety-nine years.

Minnie Carlow, a woman forty-seven years of age, was the subject of the rape.

The phase of the statute charged to have been violated is that in which it is made an offense to have carnal knowledge of a woman "so mentally diseased at the time as to have no will to oppose the act of carnal knowledge, the person having carnal knowledge of her knowing her to be so mentally diseased." Article 1063, P. C.

Bill of exceptions No. 3 complains of the receipt of the opinion testimony of the non-expert witness, Ned Owens, who was twenty-nine years of age and who had known the prosecutrix, Minnie Carlow, all his life. He gave the opinion that she was a person whose mind was not sufficiently sound to consent to or refuse the act of intercourse. He was asked this question:

"Based upon the experience and acquaintance and the same opportunity of observation of her, state how long it would take a person of ordinary intelligence to know that she was a person of unsound mind upon meeting her."

To this the witness replied:

"Immediately; you would know it by the time she spoke two words."

In qualifying the bill, the court made this statement:

"That said witness, Ned Owens, testified as follows:

"I have known Minnie Carlow all my life. During the time I have known her and have observed her well enough to form an opinion as to her mental condition. During the time I have known her and have observed her well enough to form an opinion, I have noticed she did not have a sufficiently sound mind to consent to an act of intercourse, or to refuse an act of intercourse—I do not think she had. Based on the fact that I have known her all my life, and on my opportunities for observing her. I would say she is not a person of sound mind."

Like testimony was given by the witness Will Harden. Explaining the bill, the court said:

Said witness testified as follows:

"I have known Minnie Carlow forty-one years. I have observed her. She has been to my house, and I have been to her house a good many times; she lives close to me. During the time I have observed her, and knew her, I had sufficient opportunity to form a conclusion as to whether she had a sound mind. I formed an opinion, and was able to form an opinion. In my opinion, she is not a person of sound mind."

A like procedure and like explanation apply to the testimony of the witnesses W. R. Taylor, Lud Weaver, J. C. Childs, J. A. Davis, John King, Sam Cartwright, Josh Browning, Clarence Eggleston, Homer Ward, Holt Hobbs, John Scipple, and A. C. Harrison. Proper and timely objection to the opinions of these witnesses was made and should have been sustained.

Minnie Carlow's mother, who was eighty-two years of age, testified that her daughter had suffered a stroke of paralysis early in life which affected her side; that she had received a fall which crippled her; that "her mind is no account at all." This witness said that at the time of the alleged occurrence, her daughter had been sent after some wood

about 150 or 160 yards from their home; that upon her return she noticed some blood on her underclothing. According to the witness, the prosecutrix had been subject to epileptic fits; that she had attended school and got into the Third Reader; that after the injury she withdrew from school. The witness said further:

"My daughter makes up the beds, sweeps the floors, and brings in water; she cannot cook, not with one hand; she could cook corn bread I reckon; she could not cook biscuits. Sometimes I understand all she says to me; sometimes I do not. As to understanding what she says, as a general thing—sometimes she talks foolish to me. She has not had any fits for over a year now; she takes bromide. As to my knowledge what caused the fits, the doctor says he thought it was the courses working on her, but she was too young for that at ten years old. Since that time she got all right and had her courses; yes, until about a year ago. They ceased then. She is not suffering from the effects of a change of life; not at all. She did not go to church often; no way to go. As a child she had normal sense; I suppose she did before she was paralyzed. Her health is tolerably good now. She has the ability to do a reasonable amount of work considering her paralyzed side. In sweeping, she used it under her arm. As to her fixing the beds and carrying wood and water, and my having a cow—yes, I have a cow; she don't milk. I do the feeding myself. I have no hogs."

After the transaction occurred upon which the prosecution is based, a doctor was called to examine the prosecutrix and found some lacerations indicating intercourse. This doctor, after describing what he found, said:

"I talked to her. I knew her prior to that time. I talked with her on prior occasions. * * * I do not know what disease caused her condition. There were signs of epilepsy from the history of the case. I never saw her with an epileptic fit. * * * A person who has epileptic fits does not necessarily indicate that they are insane."

This witness gave no opinion as to the mental condition of the prosecutrix.

With the exception of the testimony of the mother, which we have substantially given, none of the witnesses upon which the State relied predicated their opinions touching the mental condition of the prosecutrix upon facts detailed before the jury. It is true that all of the witnesses testified to a long acquaintance with her. The theory of the State seems to have been that without detailing any acts or circumstances upon which the opinion was founded, a sufficient predicate was laid by showing an acquaintance and opportunity for observation. It is doubtless true that upon the statement by the witness of his acquaintance with an individual whose mental condition is the subject of inquiry, it would be competent for the witness to state that

during such acquaintance he had observed no peculiarity of appearance, demeanor, speech or other eccentricity which had led to the conclusion that the individual was insane. Turner v. State, 61 Texas Crim. Rep., 101; Gardener v. State, 235 S. W. Rep., 897; Plummer v. State, 86 Texas Crim. Rep., 493. Before a witness can be permitted, however to express an opinion that the subject of inquiry is *insane or of unsound mind,* it is essential that the witness detail before the jury some act, omission, peculiarity or eccentricity upon which the opinion is formed. This view, we think, is supported by the text-writers and by the decisions of this court. See Underhill on Crim. Ev., 3d Ed., Sec. 264; Williams v. State, 37 Texas Crim. Rep., 349; Plummer v. State, 86 Texas Crim. Rep., 493; Roberts v. State, 89 Texas Crim. Rep., 454; Kellum v. State, 91 Texas Crim. Rep., 275; Gardener v. State, 235 S. W. Rep., 897, and cases referred to in the opinions mentioned.

"Nothing is stated but the bare fact that they had known, had spoken to and talked to him, and had some dealings with him. The character of the dealings, the subject of the conversation, whether he talked intelligently or not, in fact, nothing of this sort is stated. It is important that the facts upon which the opinion of the witness is given should go to the jury in order that they may have some standard by which to test the value of the opinion given. If the act, conduct or conversation detailed, to the ordinary understanding was of a trivial character, it would serve to characterize the opinion given by the witness. On the contrary, if it was of an unusual, eccentric, or extraordinary character, it might be of great value to the jury in passing upon the sanity of the defendant. If the witnesses had stated any fact, such as the conduct of the defendant, conversations with him, some acts of the defendant, however meager they might appear, there would be something upon which to base the testimony,— that is, the opinion.' ' (Williams v. State, 37 Texas Crim. Rep., 349.)

The appellant's confession was introduced in evidence. In it he admitted the act of intercourse, but denied any knowledge of a condition of mind rendering the prosecutrix incompetent to consent to the act. One of the elements of the offense is knowledge of such incompetency. It was incumbent upon the State to prove this element of the offense; that is, appellant's knowledge of the diseased mind of the prosecutrix, by competent evidence. It is believed that such knowledge on the part of the accused is not provable by opinion testimony. In the present case, the State having introduced the confession containing the exculpatory declaration that the accused was without knowledge of any defective mental condition upon the part of the prosecutrix and having relied almost *in toto* upon the confession to prove the *corpus delicti,* there rested upon the State the additional burden to prove the falsity of the exculpatory declaration.

Pharr v. State, 7 Texas Crim. App., 472; Pratt v. State, 50 Texas Crim. Rep., 227; Pickens v. State, 86 Texas Crim. Rep., 660. See also Cokeley v. State, 87 Texas Crim. Rep., 256. The introduction by the State of the entire confession was not necessary. It could have withheld part of it.

The means employed seem to have been to take from the witnesses their opinions that the condition of the prosecutrix was such that her want of capacity would have been apparent. That this is the subject of an opinion is very seriously questioned by the writer. It is clear, however, that if such opinion was to be relied upon, it should have been fortified by the facts upon which it was based. In other words, it would not suffice that a witness might say that he had long been acquainted with the prosecutrix and that in his opinion her mental condition was such as rendered her incapable of consent, and that this was apparent from a casual observation, and to withhold from the jury any act, word, or look upon which such opinion of want or capacity was based or might be discovered by a casual observation. It seems from the testimony of the mother of the prosecutrix that the mental condition of her daughter and the manifestations thereof were not always the same. The old lady said:

"As to understanding what she says, as a general thing—sometimes she talks foolish to me. She has not had any fits for over a year now; she takes bromide."

The appellant insists that the evidence was such as to call for a charge which would inform the jury that if the act took place at a lucid interval or if the appellant had no knowledge of her mental condition save that gained from her present condition and demeanor, and that at that time there was nothing to apprise him of the defect, or if there was a reasonable doubt upon that subject, the appellant should have the benefit of it. Hunt v. State, 33 Texas Crim. Rep., 252; Roberts v. State, 89 Texas Crim. Rep., 454. Special charges upon the subject were requested and refused.

The error pointed out renders proper the reversal of the judgment. Such is the order.

*Reversed.*

### ON REHEARING.

HAWKINS, JUDGE.—We have carefully examined the State's motion for rehearing and the argument filed in connection therewith. The facts of the case appeal very strongly to this court and must have so appealed to the trial court and jury, but for that very reason care should be observed in applying correct rules of law to the reception or rejection of evidence.

Our minds have remained unchanged and believing that proper disposition was made of the case in our former opinion, and that a further discussion of the questions heretofore considered would be a useless consumption of time, the motion for rehearing will be overruled.

*Overruled.*