## V. C. NEWCHURCH v. THE STATE.

No. 19707.    Delivered May 11, 1938.
Rehearing denied December 7, 1938.

The opinion states the case.

*A. T. Folsom,* of Wink, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The offense is murder; the punishment, confinement in the State Penitentiary for a term of five years.

The testimony adduced upon the trial, briefly stated, shows that appellant lived in the town of Wink and owned and operated a barber shop in a room connected with his home. He was a widower and had four children, all girls, living with him. It appears from the record that the deceased was a frequent visitor at his home and was paying marked attention to appellant's oldest daughter, Emily.

This seems to have displeased appellant to such an extent that he told the deceased to stay away from his home and leave his daughter alone. The deceased complied with the request in part, by not going to the appellant's home, but he did meet the girl at various places and at times would take her out riding without the appellant's knowledge. On the 2d day of September,

1937, the deceased and Emily decided to elope. They went to Mentone on the night of said date and were married there by the county judge. They then returned to Wink where the bride went to the home of her father and the deceased went to a hotel. The next day she wrote a note, advising her father of their marriage, which she left in her room. She then met the deceased and the two drove to Carlsbad, New Mexico, inspected the cavern and from there went to El Paso, where they spent several days, and then returned to Wink.

On the afternoon of September 8, they drove to the home of the appellant and started into the house. Appellant produced a rifle and started shooting at his unwelcome son-in-law. The first shot struck the bride in the shoulder, she having jumped in front of her husband just as appellant was in the act of firing. When the first shot was fired, deceased turned and fled. Appellant pursued him, firing as he ran, until the deceased fell. He then returned to his barber shop, fired one shot into his own body and cut his throat with a razor. A doctor was immediately called, who administered first aid and removed the appellant to a hospital, where he recovered. It was further shown that about one and one-half or two hours after appellant had been taken to the hospital, he directed a nurse to take from his trouser pocket a note written in his handwriting, and reading as follows:

"I, V. C. Newchurch give Mrs. W. E. Wands power attory to draw $100.oo from Post Office for my burial expense
          "Notify Mrs. W. E. Wands
          "400 County Road
          "Taft—Cali
"Agnes forgive me
"Revenge is sweet
"V. C. N."

Appellant did not testify but relied upon a plea of temporary insanity which he attempted to support by a number of witnesses.

By bill of exception number one, he complains because the court declined to permit him to show by Mrs. W. E. Wands that two days after the homicide, she arrived at the hospital at Wink, Texas; that she saw her father, the appellant, and at the time he was abnormal. It is our opinion that this bill fails to reflect reversible error. It appears that if the testimony of the witness had been admitted, she would have expressed an opinion without any predicate upon which such an opinion was based. Therefore, under the rule announced by this Court in the cases of

Lane v. State, 59 Texas Crim. Rep. 595; Cox v. State, 60 Texas Crim. Rep. 471; Brice v. State, 162 S. W. 874, this testimony was not admissible.

By bill of exception number two, appellant complains because he was not permitted to show by a witness that about three years prior to the unfortunate occurrence, the witness observed the deceased holding Emily on his knee with one arm around her waist and the other hand under her dress. This conduct on the part of the deceased was never reported to the appellant. We do not believe that the testimony was admissible for the reason that as he had no knowledge thereof, it could have had no bearing upon the appellant's state of mind and could not have induced him in any way to commit the act.

By bill of exception number three, appellant complains of the action of the trial court in permitting the district attorney to offer in evidence the note or power of attorney hereinabove set out and which was taken from appellant's pocket about two hours after he had reached the hospital. He objected thereto on the ground that it was immaterial, irrelevant and that it was not shown at the time what time the same was written; that it had no bearing on the inquiry before the court and was not res gestae. The question of intent, malice and design was an issue in the case, and the note or statement was admissible as tending to establish such an issue against the grounds of objection urged thereto.

In his able brief on file in this case, appellant vigorously contends that the note was in the nature of a threat not directed against deceased or any person in particular and therefore was not admissible against him. If he had objected thereto at the trial upon such ground, a different situation would have been presented and the trial court might have sustained his objection. Appellant raised no such question, however, until the case reached this Court. We are required to review the case as made by the record in the trial court.

Moreover, appellant's objection was general; it went to the entire written statement, a part of which was admissible. In such instances, he is required to separate the admissible from the inadmissible and direct his objection to that part which is inadmissible. He did not object specifically to the words "revenge is sweet," which is the only part of the statement that tends to show a threat. Hence, under the rule announced in the following cases, no error is shown. See Aven v. State, 77 Texas Crim. Rep. 37; McKinney v. State, 80 Texas Crim. Rep. 31; Davis v. State, 83 Texas Crim. Rep. 539.

Bills of exceptions numbers four and five complain of certain argument by the district attorney. We have examined the bills with much care and reached the conclusion that they do not reflect reversible error.

Bill of exception number six complains of the court's action in declining to give appellant's special requested charge which reads as follows: "You are instructed that before you can find the defendant guilty of any offense under the indictment in this cause, you must first consider the question of whether or not the defendant was sane at the time of the acts alleged in the indictment herein, and if you shall find that at such time he was temporarily insane, then and in that event you will return a verdict of not guilty."

We are of the opinion that the court in his charge adequately instructed the jury on the law of insanity and his refusal to give the requested charge was not error.

By bill of exception number seven, appellant complains because the court declined to submit to the jury appellant's requested instruction to the effect that an act is not voluntarily done if at the time the person doing the same is temporarily insane. We fail to see the need of such an instruction in view of the fact that the court specifically told the jury that no act done in a state of insanity is punishable as an offense. The court in his main charge defined the word "voluntary" as it is defined by statute. This, we think, was sufficient.

Appellant has urged a number of objections to the court's main charge. We have examined each of these in the order presented, but find none which presents reversible error.

Finding no error in the record such as would require a reversal of this case, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—We will discuss the points relied on by appellant in his motion for rehearing in the order they appear in said motion.

(a) Appellant again insists that the note or power of attorney (set out in our original opinion) found on appellant's

person after he was taken to the hospital was inadmissible. He complains also because we did not discuss the authorities cited by him as supporting his position. Referring to appellant's brief we note seven cases mentioned upon which he relied as showing the instrument in question was inadmissible. Examination of said cases reveals that proof of threats was objected to as being too general and not having reference to the party killed. No such objection was here interposed, as was pointed out in our original opinion. The case of McMahon v. State, 46 Texas Crim. Rep. 540, 81 S. W. 296, particularly relied on in appellant's motion, we do not construe as does appellant. It seems clear to us that in such case the threat proven was too general and must have been objected to on that ground.

(b) Appellant reiterates his claim that the trial court erred in not permitting him to prove by Mrs. Agnes Wands, appellant's daughter, that when she saw her father in the hospital two days after the killing he "was in an abnormal and deranged state of mind." It appears from the bill presenting this point that some objections were urged by the district attorney to preliminary examination of this witness by appellant, and sustained by the court. If such examination was for the purpose of laying a predicate upon which the witness could express the opinion sought from her the ruling of the court may have been erroneous. However, to present error the bill should have stated what appellant could have shown by said witness that appellant said or did upon which she proposed to base her opinion that he was insane. We bring forward the following excerpt from Thomas v. State, 98 Texas Crim. Rep. 428, 266 S. W. 147:

"It is doubtless true that, upon the statement by the witness of his acquaintance with an individual whose mental condition is the subject of inquiry, it would be competent for the witness to state that during such acquaintance he had observed no peculiarity of appearance, demeanor, speech, or other eccentricity which had led him to the conclusion that the individual was insane. Turner v. State, 61 Texas Crim. Rep. 101, 133 S. W. 1052; Gardener v. State, 90 Texas Crim. Rep. 339, 235 S. W. 897; Plummer v. State, 86 Texas Crim. Rep. 493, 218 S. W. 499. Before a witness can be permitted, however, to express an opinion that the subject of inquiry is *insane* or *of unsound mind*, it is essential that the witness detail before the jury some act, omission, peculiarity or eccentricity upon which the opinion is formed. This view, we think, is supported by the text-writers, and by the decisions of this Court. See Underhill on Crim. Ev., (3d ed.) Sec. 264; Williams v. State, 37 Texas Crim.

Rep. 349, 39 S. W. 687; Plummer v. State, 86 Texas Crim. Rep. 493, 218 S. W. 499; Roberts v. State, 89 Texas Crim. Rep. 454, 231 S. W. 759; Kellum v. State, 91 Texas Crim. Rep. 275, 238 S. W. 940; Gardner v. State, 90 Texas Crim. Rep. 339, 235 S. W. 897, and cases referred to in the opinions mentioned." See, also, Meyers v. State, 113 Texas Crim. Rep. 26, 19 S. W. (2d) 317; Shields v. State, 104 Texas Crim. Rep. 253, 283 S. W. 844; Langhorn v. State, 105 Texas Crim. Rep. 470, 289 S. W. 57; Upton v. State, 20 S. W. (2d) 794.

(c) Appellant next reiterates that bills of exception four and five, complaining of argument of the district attorney, reflect error demanding a reversal. Bill number four reflects that in his closing argument the district attorney stated that "no witness had testified or attempted to testify to any improper actions of the deceased [Crouse] toward defendant's girls except that Jeff Lee saw him kiss the daughter Emily." Appellant objected to the statement of the district attorney on the ground that said argument was improper in that appellant had attempted to prove another familiarity on the part of deceased toward Emily, whom deceased afterwards married, which evidence was excluded. The court immediately sustained the objection and instructed the jury not to consider said argument. The statement of the district attorney was not of that character which could not be remedied by the prompt action of the court.

By bill number five appellant complained of a statement of the district attorney in his closing argument as follows: " * * * the State had given to the jury all the facts it had against deceased Crouse and there was nothing against him." In his motion for rehearing appellant is rather severe in his criticism of the disposition of this bill in our original opinion; taking the position that to hold such argument harmless would be equivalent to overruling twenty-five cases which he cites in his brief in support of his proposition. Counsel, we think, rather exaggerates the effect of our holding. This Court has found it necessary often to reverse cases on account of improper argument, but ordinarily they are cases where the argument injected a new fact which was harmful to the rights of accused in some particular, or in which the argument was of such a manifestly improper and harmful nature that it would be unjust to let the conviction stand in the face of such argument. We find nothing of the kind in the argument here complained of, even though the district attorney may not have been justified in making the statement. It must be borne in mind that there was not even a semblance of self-defense in this case; nothing to justify

appellant under the law in killing Crouse. The sole defense interposed was that of insanity. Nothing in the statement objected to impinged on the only defense offered. If Crouse had been guilty of improper familiarity towards the girl he afterward married he had made such amends as it was possible for him to make, and under the law he had not forfeited his life at the hands of appellant. The argument might reasonably be disposed of on the ground that from all the facts presented to the jury in regard to deceased Crouse the district attorney drew the conclusion "that there was nothing against him." But even conceding that it was the statement of a fact by the district attorney which ought not to have been made, still we are unable to reach the conclusion that under the facts of this case it should bring about a reversal of the judgment. It has often been said that an argument must be appraised in the light of the circumstances of the particular case, and that the same argument in one instance might be reversible error and in another harmless. See Vineyard v. State, 96 Texas Crim. Rep. 401, 257 S. W. 548, and cases therein cited; also Threadgill v. State, 124 Texas Crim. Rep. 287, 61 S. W. (2d) 821; Heidle v. State, 129 Texas Crim. Rep. 201, 86 S. W. (2d) 641.

The motion for rehearing is overruled.