## L. E. WILLIAMS v. THE STATE.

### *No. 1181.  Decided March 24th, 1897.*

**1.  Insanity—Non-Expert Evidence.**

A non-expert witness is permitted to give his opinion, as to the sanity of a person, predicated upon facts involving the acts, conduct, etc., of the person inquired about.

**2.  Same—Predicate for Such Opinion Evidence.**

To render opinion evidence of non-professional witnesses competent, as to the sanity of a party, it must appear:  (1) That the witness had adequate means of observation; that is, he must have had the opportunity of forming an accurate judgment as to the existence of insanity, considered with reference to its supposed character or degree.  (2) He must first state what he personally knows of the party's sayings and doings indicating insanity.  His testimony must show that such intimate and close relations existed between the alleged insane person and himself as fairly to lead to the conclusion that his opinion will be justified by his opportunities for observing the party.  (3) He may state the facts, conduct, conversations and business transactions, give the look of the eye and the action of the man.  (4) But, the opinion of a person not of the medical profession is not evidence, unless the facts upon which it is based have come under his own observation; and, unless, also, he states those facts to the jury.

**3.  Same—Non-Professional Evidence—What Constitutes.**

Having stated the appearance, conduct, or conversation, or the other particular fact from which the state of the party's mind may be inferred, the non-professional witnesses may state their inferences or opinions, as the result of those facts.  After all, it is the facts the witness details, the conduct which he describes, which chiefly and principally constitutes the testimony to be relied on.

**4.  Same—Expert Opinion Evidence—Predicate for Hypothetical Case.**

On a question of insanity, the hypothetical case stated to an expert witness, upon which he is authorized to give an opinion, must be of the whole case; that is, all the facts (and not a part of the facts) bearing upon that issue must be grouped and stated to the expert.  He cannot be asked as to an hypothesis having no foundation in the evidence, or statements made to him out of court, or read by him in a newspaper.  The rule is, that the expert opinion must be based upon the evidence taken at the then trial.  Following, Webb v. State, 9 Tex. Crim. App., 490.

**5.  Same—Reasonable Doubt—Quantum of Proof.**

As to proof of insanity. it is not necessary that it be established beyond a reasonable doubt; it is sufficient if the evidence reasonably satisfies the jury of its existence at the time the act was committed; the jury ascertaining the condition of defendant's mind, at the time of the killing, by a consideration of its condition before that time, and his acts and conduct before, at the time and after the same, in connection with all the other facts in the case.

APPEAL from the Criminal District Court of Dallas.   Tried below before Hon. CHARLES F. CLINT.

Appeal from a conviction for murder in the first degree;  penalty, imprisonment in the penitentiary for life.

This is the second appeal in this case.   The former appeal was from a conviction for murder in the first degree with the death penalty.   See, Williams v. State, 35 Tex. Crim. Rep., 183.   It will be seen that this case is disposed of solely with reference to the questions pertaining to the testimony adduced at the trial relating to defendant's insanity.   As to this matter, the facts are sufficiently stated in the opinion, and further statement is unnecessary.

[No briefs have come to the hands of the Reporter.]

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at imprisonment in the penitentiary for life, and prosecutes this appeal. Appellant is charged with the murder of his wife. The proof shows that defendant and his wife were occupying as a sleeping apartment the upstairs room of a building in Dallas, and that he killed his wife by striking her with an axe or bludgeon. Subsequently he threw her body out of the window, dug a grave or hole, and concealed the body, near the building, where it was subsequently found. The only questions that arise in this case are as to the appellant's defense of insanity. These questions arise upon the charge of the court and the admission of evidence. It is contended that the trial court should not have given the charge as to the burden of proof on the defense of insanity, but that the requested instructions should have been given which specifically charged the jury to find beyond a reasonable doubt that appellant was sane at the time he committed the act, before they would be authorized to return a verdict of guilty. The charge given by the court on this point was as follows: "It is not necessary that the insanity of the defendant, if there is any, should be established beyond a reasonable doubt. It is sufficient if it be established to your satisfaction; that is, such and so much proof as reasonably satisfies you of the existence of insanity at the time the act was committed. To ascertain the condition of defendant's mind at the time of the killing, you should look to its condition before that time, his conduct, acts, and all other surroundings, ascertaining whether his mental condition was such as to enable him to know that he was doing an unlawful or wrongful act, looking at his acts, conduct, and movements before and on the occasion of the crime, his acts, conduct, and movements after the crime, and all other facts in the case, to reach a correct conclusion as to whether defendant was of a sound mind or not." This charge, if anything, is more liberal towards the defendant than the charge which was approved by this court in the case of Webb v. State, 9 Tex. Crim. App., 490, and which has since been followed. The State introduced in rebuttal of the defendant's testimony of insanity a number of witnesses; some of them experts, and some non-experts. The bill of exceptions shows that nine witnesses who were non-experts were introduced by the State, to-wit: D. W. Rottan, R. L. Pool, Mrs. M. T. Myers, W. S. Anderson, John Day, R. P. Saunderson, Ben E. Cabell, Joe Rhodes, and W. R. Moreland. Rottan testified that he had known the defendant only a week before the homicide; that he was a carpenter and had put up a sign at defendant's shop, and fixed a place where persons could leave orders for carpenter work; that he had never seen the defendant sober; that the only business he had ever had at the defendant's shop was to see whether any orders had been left for him;

that he had talked with the defendant, and he talked all right to a certain extent; that he had never talked to him when he was duly sober. Pool testified that he was a partner of Rottan, and stated that he had known the defendant three weeks or a month before the death of his wife; that he was at his shop every day; defendant was "full" all the time. Mrs. M. T. Myers testified that she had known the defendant two or three years; that she caned chairs for him; saw him once or twice a week for about a year; saw him sometimes before she began work for him, but not often; was at his house tolerably often after she began work for him; never had anything to say to him, or to do with him, except to work. Anderson testified that he had known defendant a little over three years; lived right across the street from him, and could see him at his work; had a talk with him once in a great while; saw him nearly every day for three years; saw him during the time just preceding the death of his wife; witness was a baker by trade, and defendant dealt with him sometimes; never had an extended conversation with him; would pass only a few words when he came in to buy bread, and he would then go off. R. P. Saunderson stated that he was a deputy constable; had known defendant for about three years; lived about three blocks from him, and saw him nearly every day during that time; had conversations with him, but no business transactions. Ben E. Cabell stated that he had known defendant personally a short time before the killing; had seen him before his arrest, but not very often; had seen him since his arrest, and had a few conversations with him. Joe Rhodes testified that he was the jailer; had known the defendant four or five years; knew him before he was put in jail; was well acquainted with him; but had not seen him very often for quite a while before he was arrested; never had any conversations with him; had seen him often since he had been put in jail. W. R. Moreland testified that he was assistant jailer; did not know defendant before he was put in jail, but had known him since; that he saw him several times a day. After the predicate as aforesaid was laid by each of the witnesses, the State was permitted to ask said witnesses to give their opinion as to the sanity or insanity of the defendant, and each of said witnesses answered that they considered him sane. Appellant objected to each of said witnesses giving his opinion to the jury as to the sanity or insanity of the defendant, on the ground that none of said witnesses were experts; that none of them had shown that they were sufficiently acquainted with appellant to give an opinion as to his mental status, and that none of said witnesses had stated to the jury the facts—that is, the acts, conduct, and conversations of defendant, upon which alone said witnesses would be authorized as non-experts to give an opinion to the jury as to the sanity of the defendant. The court overruled appellant's objections, and permitted each of said witnesses to give his opinion as aforesaid, and appellant now assigns the actions of the court as to each of said witnesses as error. It is the rule in all the American States, so far as we are advised, except Massachusetts, that a non-expert witness is permitted to

give his opinion as to the sanity of a person, predicated upon facts involving the acts, conduct, etc., of the person inquired about. In all cases, however, it appears that these facts must be stated by the witness. Mr. Bishop, in his new Criminal Procedure (volume 2), says:

"Sec. 678. A non-expert witness in a criminal case wherein insanity is set up in defense may first state what he personally knows of the party's sayings and doings indicating insanity. Then, yet not before, he may add his opinion of such party's mental condition. And it appears to be no objection that in some degree the opinion is based on facts of such a nature that he could not transmit them to the jury. Yet he can deliver no opinion from facts not within his own observation.

"Sec. 679. But adequate means of observation must have been possessed by the non-expert, to render his opinion admissible. It is not enough that he could testify to some relevant fact. The question of what are such adequate means is not technical; but the witness must have had the opportunity of forming an accurate judgment as to the existence of the insanity, considered with reference to its supposed character or degree.

"Sec. 680. The weight of the evidence with the jury will depend on a variety of circumstances. For example, 'if the reasons are frivolous or inconclusive,' to employ the rather strong language of Williams, Judge, 'the opinions of witnesses are worth nothing.' "

A great number of authorities are cited in support of the text. We quote from Buswell on Insanity as follows:

"Sec. 240. Except in the case of the attesting witnesses to a will, the mere opinions of persons not experts are inadmissible as evidence upon the question of a party's insanity. But it is held generally in the American courts, when a person's mental condition or capacity is in question, that the opinions of non-professional witnesses in regard to such capacity, derived from personal observation of and conversations with such persons, are admissible in evidence when taken in connection with the facts upon which such opinions are founded. The rule admitting this class of testimony constitutes an exception to the general rule of evidence which excludes the opinions of witnesses who have not some peculiar skill or professional knowledge in relation to the matter in issue, although such opinions are derived from the witnesses' personal observation, and are offered to be given in evidence in connection with the facts on which they are based. Proof of expressions of opinion made out of court as to the sanity or insanity of a party are inadmissible upon the issue of the party's mental capacity, being mere hearsay, as well as unsupported by a statement of the facts on which they are founded. So the declaration of a testator, made at the time of the factum, were held inadmissible to prove the insanity of the testator's son, for whose benefit the will created a trust.

"Sec. 241. To lay a foundation for the admission in evidence of such opinions, the specific facts upon which the opinions are based must first be started by the witness, or his testimony must show that such

intimate and close relations have existed between the party alleged to be insane and himself as fairly to lead to the conclusion that his opinions will be justified by his opportunities for observing the party. But the mere 'impressions' of one who has had only a passing acquaintance with the party are inadmissible as evidence. The question whether a witness has stated facts and reasons sufficient to render his opinion upon the issue competent evidence is to be determined by the court in all cases. But the question of the cogency of such facts and reasons as affecting the weight to be given to the opinion of the witness is for the jury.

"Sec. 242. In support of the rule as stated it is said that the impression made on the mind of a witness by the conduct, conversation, and business transactions of any person is not mere opinion; it is knowledge, and is to be admitted upon a principle strictly analogous to that under which opinions upon questions of personal identity and handwriting are admitted. It is also said that: 'In the case of insanity a witness may state facts, may give the look of the eye and the action of the man; but unless he is permitted to tell what they indicate, or, in other words, be permitted to express an opinion, he cannot convey to the mind distinctly the condition of the man that such acts and looks portray. As rebutting testimony, it is certainly competent to ask a witness whether, in his opinion, the subject is not of sound mind. The weight and value of an opinion is a very different thing from its admissibility as evidence. Unless the witness gives the facts upon which his opinion is founded, then such an opinion ought not to be admitted.'

"Sec. 243. Thus it seems that opinions, though admissible with the limitations stated, are only to be considered as of weight so far as they illustrate the character and effect upon the mind of the witness of the facts on which they are based. And it is said in a leading English case that 'the court does not depend upon the opinions of witnesses, but upon the facts to which they depose.' So, in cases involving testamentary capacity, it is held that no judicial tribunal would be justified in deciding against the capacity of a testator upon the mere opinions of witnesses, however numerous or respectable, for the opinions of witnesses must be brought to the test of facts, so that the court may judge of the weight to which the opinion is entitled." In Doe v. Reagan, 5 Blackf. 217, 33 Amer. Decs., 466, the rule is thus stated: "Opinions of witnesses may be taken as to the sanity of a grantor, but the facts upon which the opinions are founded must be also stated. Men of medical skill, who have no personal knowledge of the facts, may be asked their opinions whether certain appearances detailed by other witnesses are symptoms of insanity. But the opinion of a person not of the medical profession is not evidence, unless the facts upon which it is based have come under his own observation, and unless also he states those facts to the jury. In the case before us the facts were not stated from which the opinions were formed, and the testimony was consequently inadmissible." From Dove v. State, 3 Heisk., 348, upon this point, we quote

as follows: "Physicians may state their opinion of the soundness of a testator's mind, but they must state the circumstances and symptoms from which they draw their conclusions. As to all others, their opinions, construed merely as opinions, are not evidence. But, having stated the appearance, conduct, or conversation of the testator, or other particular fact, from which his state of mind may be inferred, they are at liberty to state their inferences, conclusions, or opinions as the result of those facts." The court adds: "After all, it is the facts which the witness details, the conduct which he describes, which chiefly and principally constitutes the testimony to be relied on." The court cites Gibson v. Gibson, 9 Yerg., 329. To the same effect, see, State v. Bryant, 93 Mo., 273, and Wood v. State, 58 Miss., 741. The same rule has been followed in this State, and is supported by the following authorities: Thomas v. State, 40 Texas, 60; Holcomb v. State, 41 Texas, 125; McClackey v. State, 5 Tex. Crim. App., 320, and Adams v. State, 34 Tex. Crim. Rep., 470. And see, Garrison v. Blanton (a civil case, decided by Roberts, Chief Justice, in which the same principle is announced), 48 Texas, 299. The case of McClackey, supra, has been referred to as an authority for the proposition that non-experts can give their opinions as to the sanity of a person under investigation, without stating any facts upon which such opinions are based; but an examination of the opinion will not support this contention. In discussing that case the court cites the cases of Thomas and Holcomb, supra, and then proceeds to construe them as follows: "It may be that from some expressions to be found in the cases of Thomas and Holcomb the court below might have understood that on the question of sanity or insanity it was within the province of the court to determine, upon the extent of the acquaintance and the sufficiency of the means of information, as to the facts stated upon which the conclusions of the witness were based, and to determine upon the admissibility of the evidence, and to admit it or exclude it, according as the facts should appear, as developed on the examination of the witness. If so, we are of the opinion that the conclusion was erroneous. The question of insanity being a recognized defense, whatever of legitimate evidence was offered, it should have gone to the jury. The main question determined by these cases, as we understand them, is that on the question of the sanity or insanity of the party accused, not only experts, but non-professional witnesses, may state their conclusions, from the facts within their knowledge, as to the mental condition of the party; and that whether the means of information, or facts proved, or the conclusions drawn by the witness are of the satisfactory character required to base a finding upon or not is for the consideration of the jury under proper instructions." In McClackey's case the testimony of the non-expert is not given from the record, but summarized by the reporter as follows: "During the trial the defense offered to prove by E. Y. Brown that he had known the appellant since June, 1873, and considered him crazy, basing this opinion on the general con-

duct and dealings of the appellant, who would forget his promises, and, when reminded of them, would seem as if in a dream. The counsel for the State objected to this testimony, on the ground that the witness was not sufficiently acquainted with the habits and character of the appellant to give an intelligent opinion, and because the witness stated conclusions, and not facts, as the basis of his opinion." As before observed, the language of said witness is not given, but enough is stated to indicate that some facts were stated by the witness on which to predicate his opinion; so the real question in that case was as to the sufficiency of the facts proved on which the witness was authorized to give an opinion; and, as we understand it, this decision only goes to the extent of holding that, where some facts are stated by the witness bearing upon the mental status of the person inquired about, it is then error for the court to withhold from the jury the opinion of the witness as to the sanity of the person under investigation. As this was the question before the court, said case is not authority for the proposition that the mere opinion of a non-expert witness is authorized to go to the jury as evidence. On the contrary, this question was not really before the court. In applying the rule as above stated to the facts of this case, it will be observed that four of the witnesses had known the defendant from two to four years. All of the others, except one, had known him a short time before the killing—from one week to a month; and the witness, Moreland, had known him since he had been placed in jail for the homicide. Of the four he had known longest, none of them appear to have been on terms of intimacy with him. Their acquaintance was of the most casual character. Some had had business transactions with him, others were only slightly acquainted with him, and, as before shown, for only a short time. Not one of said witnesses details any fact as to any act or conduct of the defendant. Those who seem to have had some casual business transactions with him do not narrate the character of such transactions, or what was said or done by the defendant at the time, nor the manner in which he conducted himself, or how he appeared. Nothing is stated but the bare fact that they had known him, had spoken to and talked with him, and had had some dealings with him. The character of the dealings, the subject of the conversation, whether he talked intelligently or not, in fact nothing of this sort is stated. In the first instance, the admissibility of the opinion of a non-expert witness is a question for the court; and if the witnesses had stated any fact, such as the conduct of the defendant, conversations with the defendant, some acts of the defendant, however meager they might appear, there would be something upon which the testimony— that is, the opinion—of such non-expert witnesses might be predicated. It is important that these facts upon which the opinion of the witness is given should go to the jury, in order that they may have some standard by which to test the value of the opinion given. If the act, conduct, or conversation detailed, to the ordinary understanding, was of a trivial character, it would serve to characterize the opinion given by the wit-

ness.   On the contrary, if it was of an unusual, eccentric, or extraordinary character, it might be of great value to the jury in passing upon the sanity of the defendant.  As was said in the case of Dove v. State, supra:   "After all, it is the facts which a witness details, the conduct which he describes, which chiefly and principally constitute the testimony to be relied on."   Some of the witnesses had known the defendant for only a brief time before the homicide—simply acquainted with him—and yet these witnesses were permitted, as well as the others, to give to the jury their opinion as to his sanity, without stating any act, conduct, or conversation whatever with the defendant, upon which such opinion was predicated.   Even expert witnesses are required to state the fact upon which they predicate their opinion as to the sanity or insanity of a defendant, or to state their opinion predicated upon a hypothetical case stated.   If the latitude given by the learned trial judge to the non-expert witnesses in this case was allowed, it would soon obliterate all distinction between expert and non-expert witnesses, and would, in effect, give a non-expert witness, who casually knew a defendant, an advantage in the expression of an opinion over a witness who was an expert.   The practical operation of such a rule would be to authorize every man in the community who might have an acquaintance with the person on trial, whether intimate or not, without stating any facts, to go before the jury and give his opinion as to the sanity of a defendant on trial.   This might result in testing the sanity of a person on trial by numbers alone; that is, by the number of witnesses, who, from one cause or another, could be brought to bear in favor of or against him.  Such, in our opinion, was never the intention of the law.   Moreover, if non-experts are allowed to state their opinions, without giving the facts upon which they are based, and experts are then introduced, the hypothetical case put to them would consist solely of opinions, without facts, of such non-experts, and on this alone they would be authorized to give to the jury an opinion as to the sanity of defendant.   Such a result manifests the absurdity of allowing this character of evidence. The principal, if not the sole, defense set up by the defendant was insanity.   He introduced a number of witnesses, and proved specific acts which were claimed by him as tending to show insanity on his part at the time of the commission of the act.   These facts were presented in the shape of a hypothetical case to expert witnesses introduced by him, who testified, upon the case put, that in their opinion appellant was insane at the time of the homicide.   So it became and was a material issue whether or not appellant was insane, and we cannot tell what effect the admission of the illegal testimony might have had upon the minds of the jury.   In our opinion, its tendency was to the prejudice and injury of the appellant upon this important question.   The State introduced as an expert Dr. V. P. Armstrong, who stated "that he had heard the testimony in this case since dinner time; that he had read the testimony as contained in the statement of facts as stated in the Dallas News, purporting to be the evidence introduced on a former trial of this case;

that when he came into court A. T. Obenchain was giving his testimony; that he did not know how long he had been on the stand. Thereupon the State asked the witness to give his opinion, based upon said newspaper account of the testimony, together with what he had heard in the court room, as to whether the defendant was sane or insane at the time of the homicide. The defendant objected to the witness being allowed to give an opinion based upon what the witness had read in the newspaper, and he also objected to witness giving his opinion in the case, unless a hypothetical case, giving the substance of the facts, was submitted to the witness, or unless the witness had heard all of the testimony in the case. The defendant further objected to said witness being allowed to give his opinion, because, according to the testimony of the witness himself, he did not hear the testimony of Mark Soper, Mrs. Mark Soper, Dick Johnson and Ben E. Cabell; and also failed to hear a large part of the testimony of A. T. Obenchain. The court overruled the objections, and the witness was permitted to answer the question, and give his opinion as to the sanity of the defendant at the time of the homicide, which was that he considered the defendant sane at the time of the commission of the offense. Counsel for appellant excepted, and reserved his bill of exceptions." The learned trial judge states: "The evidence read by Armstrong was similar to that which had been adduced before his arrival in the court room; in fact, it was all the evidence adduced on the former trial of this case. It was the same, in substance, to that introduced on this trial. Besides, he heard all of the defendant's evidence, and nearly all of the State's witnesses testifying on this trial." This court held, in Webb v. State, 9 Tex. Crim. App., 490, after a full discussion of the authorities, that the hypothetical case stated to an expert witness, upon which he was authorized to give an opinion must be of the whole case; that is, that in stating the hypothetical case upon which he was asked to give an opinion all of the facts (and not a part of the facts) bearing upon that issue must be grouped, and stated to the expert. We do not feel that we could add anything by way of reason or authority to what was said in that case by White, Presiding Judge. There is a feature in this case not in the Webb case. The opinion of the witness in this case was based partly at least upon the newspaper report of the evidence taken upon this question at a former trial. The rule is that the opinion must be based upon the evidence taken before the then trial. The newspaper report was nothing but hearsay testimony. We quote from Whart. Crim. Ev., § 418: "An expert cannot be asked as to an hypothesis having no foundation in the evidence in the case [Guetig v. State, 66 Ind., 95; Muldowney v. Railroad Co., 39 Iowa, 615; State v. Stokeley, 16 Minn., 282 (Gil., 249)], or resting upon statements made to him out of court, Heald v. Thing, 45 Me., 392]." Although the judge stated at the time that the newspaper account of the trial upon the question of insanity was substantially the same as that developed on the present trial, yet it was not competent for the judge to make this observation in the presence of the jury. Even

if he had been tendered as a witness to prove this fact, it would have been inadmissible for any purpose, under the circumstances attending this question. This is not the method of presenting a hypothetical case to the jury. It must be from the facts, and all of the facts, proved on this trial. If the illegitimate testimony upon which the hypothetical case was put to the witness, to-wit: the newspaper account, could be eliminated from the case, yet, upon the partial testimony that the expert stated he had heard, he was not authorized to give an opinion. This case was before this court on a former appeal, and was reversed. This is an appeal from a second conviction. As stated before, the principal, if not the sole, defense of appellant was insanity. It was not the province of the court below, nor is it of this court, to determine whether or not he was insane at the time he committed the deed. That issue was alone for the jury, to be tried fairly and impartially, according to the rules of law, and the defendant had a right to all legitimate testimony bearing upon this question, and the State had a right to use against him only that character of testimony which, by the rules of evidence, is admissible. The trial by jury would be a hollow mockery if the court was authorized to admit or reject evidence as it might feel inclined. The testimony of the non-expert witnesses and of the expert was of a character to greatly prejudice the rights of the appellant, and its admission was violative of the known rules of evidence, and for the error of the court in this regard the judgment must be reversed, and the cause remanded.

*Reversed and Remanded.*