GEORGE G. PLUMMER v. THE STATE.

No. 5591. Decided January 14, 1920.

Rehearing denied February 18, 1920.

1.—Assault to Murder —Insanity—Evidence—Non-expert Witnesses.

Where, upon trial of assault to murder, the principal defense was insanity of the defendant, it was reversible error to refuse defendant's witnesses who were well acquainted with defendant, to testify that they observed defendant's physical and mental condition the morning after the

difficulty, and to narrate this condition and to give their opinion as to defendant's mental condition at said time.

### 2.—Same—Rule Stated—Insanity—Non-expert Witnesses—Physical Condition.

The exact inquiry in a case of mental soundness, *vel non* must apply to the particular act charged, but it is always permissible to ask the witness the general question as to the mental soundness or unsoundness of an accused, and to prove the same by non-expert witnesses, whose evidence has disclosed facts and opportunities for observation upon which such testimony may be predicated, and to show the physical condition of the patient as part of the inquiry.

### 3.—Same—Evidence—Insanity—Opinion of Witness.

Upon trial of assault with intent to murder, it was reversible error to permit State's witnesses, without qualifying as non-expert witnesses as to facts and opportunities of observation, to testify that they saw nothing in defendant's acts or conversation upon seeing him once, to indicate that his mind was other than normal.

### 4.—Same—Charge of Court—Insanity.

Great care should be taken in the court's charge on the question of insanity to avoid repetition and the insertion of unnecessary details.

### 5.—Same—Bill of Exceptions—Statement of Facts—Rule Stated.

A bill of exceptions should be sufficient without the aid of the statement of facts to disclose the error complained of. Following: Davis v. State, 14 Texas Crim. Rep., 645; However, the rules of construction will not be given an effect so restrictive as to defeat the purpose of the law requiring bills of exception.

### 6.—Same—Statement of Facts—Rule Stated.

In a criminal case is is necessary to read the statement of facts on appeal to determine the sufficiency of the evidence before an affirmance can be ordered, and to consider the legal questions presented in the light of the facts.

### 7.—Same—Rules of Practice—Arbitrary Requirements.

Rules of practice are not intended to incumber the court with technical and arbitrary requirements, or to enjoin such rigid adherence upon them as precludes their observance by reasonable and substantial compliance. Following: Railway v. Pemberton, 106 Texas, 466, and in the instant case the bills of exception with reference to the defendant's mental condition will be given consideration.

### 8.—Same—Means of Observation—Insanity—Rule Stated—Predicate—Opinion of Witness.

The fact that no conversation with the defendant was detailed by defendant's witnesses, whose opinion was excluded, is not controlling, as the deportment, conduct, employment, manner of speech, habits, and all traits and demeanor are proper elements in a predicate for non-expert opinion. Following: Turner v. State, 61 Texas Crim. Rep., 97, 133 S. W. Rep., 1054, and other cases.

9.—Same—Case Stated—Means of Observation—Insanity—Opinion of Witness.

Where one of defendant's witnesses would have testified that he observed the accused the day after the shooting; that in his eyes was a vacant stare; that they were almost expressionless; that he did not appear to be conscious of what was going on, and another witness would have testified that defendant appeared physically collapsed, nervous and weak, pale and no color in his face, and both would have expressed the opinion that his mind was unsound basing the same on long years of acquaintance and observation, their testimony should have been admitted.   Following: Williams v. State, 37 Texas Crim. Rep., 348, and other cases, and this although the facts and details set out in the bill of exceptions were meager, and the exclusion of the same was reversible error.

Appeal from the Criminal District Court of Tarrant.   Tried below before the Hon. George E. Hosey, judge.

Appeal from a conviction of assault with intent to murder; penalty, seven years imprisonment in the penitentiary.

In addition to what has been said in the opinion of the court, and to show the immediate facts surrounding the case, it may be further stated that defendant's family consisted of himself, his wife and two children, one a son of about fourteen years and one a daughter of about seven years of age;   that according to the defense testimony the husband and wife had lived together amicably for some eighteen years, and until about three weeks before this that at this time defendant was still suffering from the enfeebling effects of an attack of the influenza and that he was irritable from loss of sleep; that he was constantly worried over domestic troubles, fearing a separation of his family; that on Friday night, before the shooting on the following Sunday night, his wife left their home with the little daughter in company with one of her kinswomen, after the latter and the defendant had had a wordy altercation (in which the lady used vigorous terms and defendant accused her of breaking up his home), and that the wife refused to return and live with him although he and the young son followed her at once and urged her to do so, and continued their efforts in this direction the following day; that about nine o'clock on the Sunday night following her departure, while his wife and her two lady companions were at defendant's home for the purpose of getting her clothes which she had left behind, defendant suddenly entered the house and asked his wife, "What does this mean?" and after being told by her that she came for her clothes, drew an automatic pistol and shot her in the breast, firing another shot at her as she ran away, which took effect in her left hip, and still another shot after she had fallen in the yard, which took effect in her heel; that he then lay down by her side and asked her whether she was hurt, and addressed terms of endearment towards her, until he was arrested and taken away.

It was on the morning following the shooting that the witnesses Estes and Finney, saw defendant in jail and observed his collapsed physical and mental condition, to which they offered to testify and which was ruled out by the court.   The defendant's wife testified

as to threats by and intolerable conduct of defendant and that she left him on that account. One of her lady companions also testified for the State, and the young son testified in behalf of his father, who also testified, among other things, that he did not threaten his wife, and did not know that he shot her; the main facts as above stated not being materially variant.

*Baskin, Eastus & Ammerman,* for appellant.—On question of non-expert testimony on insanity: Thomas v. State, 40 Texas, 60; Holcomb v. State, 41 id., 125; McClackey v. State, 5 Texas Crim. App., 20; Webb v. State, 5 id., 596; Williams v. State, 37 Texas Crim. Rep., 348.

On question of objections to opinions of State's witnesses: Merritt v. State, 39 id., 70; McLeod v. State, 31 id., 332; Ellis v. State, 33 Texas Crim. Rep., 86; Henderson v. State, 49 id., 512; Wells v. State, 50 id., 511; Sims v. State, 50 id., 563; Betts v. State 48 id., 522; Lee v. State, 43 id., 285; Burton v. State, 51 id., 196; Cox v. State, 60 Texas Crim. Rep., 471, 132 S. W. Rep., 125.

*Alvin M. Owsley,* Assistant Attorney General, *Jesse M. Brown,* District Attorney, for the State.—Cited: Betts v. State, 48 Texas Crim. Rep., 522; Wells v. State, 50 id., 499; Williams v. State. 37 id., 348; Burks v. State, 50 id., 185; Taylor v. State, 49 id., 7, and cases cited in the opinion.

LATTIMORE, Judge.—Appellant was convicted in the Criminal District Court of Tarrant County, of the offense of assault to murder, and his punishment fixed at seven years in the penitentiary.

The facts are rather lengthy, and, inasmuch as a statement of them is not necessary to dispose of the case, we will not discuss them further than to say that the evidence shows almost without contradiction, that appellant shot his wife, and inflicted serious injury upon her at the time charged in the indictment.

Appellant's principal defense was insanity. He placed on the stand a number of witnesses on this proposition—among them, one John Estes, who testified that he had known the appellant for twenty-four years intimately; that appellant had gone to school to him when a boy, and that he had known him well ever since. Mr. Estes testified that on the occasion of the trouble, which was the the basis of this prosecution, at the solicitation of appellant's brother, he went to the county jail, where appellant was confined, and there saw and attempted to talk with him. This witness was asked by appellant's counsel to state appellant's physical condition, but upon the State's objection, he was not allowed to narrate the same. In stating his purpose for asking for such evidence, appellant sets forth that he proposed to follow up same by asking this same witness his opinion as to appellant's mental condition at said time; and sets

forth what the witness would have testified, both as to his physical
condition, and being then of unsound mind. The court refused to
allow said question, either as to his physical condition, or to permit
said witness after detailing the manner and appearance of appel-
lant at said time to say that in his opinion he was then of unsound
mind. Such refusal of the trial court is here presented by two bills
of exception. The court's action was erroneous in each instance.
The exact inquiry in such case as to the mental soundness, *vel non*,
must apply to the particular act charged, but it is always permis-
sible to ask the witness the general question as to the mental sound-
ness or unsoundness of an accused, and to prove the same by unex-
pert witnesses, whose evidence has disclosed facts and opportunities
for observation, upon which such testimony may be predicated.
As insanity is a disease of the brain, caused by some physical or
mental disorder, it is always permissible to show the physical con-
dition of the patient, as a part of the inquiry.

What we have just said is true as to the evidence of the witness
Finney, as appears in appellant's bill of exceptions No. 8. This
witness, after stating that he had known appellant all his life;
that he made his bond, and kept him in his home for several days
thereafter, was asked to describe appellant's physical and mental
condition while in his said home; to which objection was made by
the State, and sustained by the court. Appellant states in his bill,
which was duly approved, that if allowed to answer, said witness
would have stated such physical conditions as described in said bill,
and would have further stated that in his opinion, appellant was
of unsound mind during said time. This was clearly admissible.

It is difficult to comprehend the view of the trial court. State's
witnesses Wilburn, Mrs. Rosenback, and county attorney Brown,
each of whom appears to have seen appellant but once, were per-
mitted, over objection, to state that they saw nothing in appellant's
acts or conversation on said occasion, to indicate that his mind was
other than normal. Appellant's objection to this evidence was that
said witnesses had not been shown to have had sufficient opportuni-
ties for observation, and that their answers were but opinions.
Most testimony of a non-expert witness resolves itself into an
opinion when the direct question is put, but just why the evidence
of Estes and Finney, who had known appellant all his life, and
offered to give their opinions as to his mental soundness, was re-
jected, and the opinions of said State witnesses, who only saw him
the one time, were admitted, is not quite clear.

Nor are we quite in agreement with the form of questions pro-
pounded to these State witnesses. We do not think the same
presents a proper point of interrogation. Substantially, these
witnesses were asked if on the occasion testified about, they saw or
heard appellant do or say anything which indicated that his mind
was other than normal, and there the inquiry practically began

and ended.   The real question is whether or not the mind of the accused, at the moment of the commission of the offense, is sound or otherwise, as to the act charged; and that is the usual, customary, and settled point of inquiry. Normality of mind is not the test of legal responsibility, either under our statutes or decisions. If it be desired by either side to put in evidence the opinions of non-experts that on a given occasion an accused talked and acted as he usually did, and that there was nothing in his acts or conversation different from his customary conduct, it must be shown as a predicate that the witness had at least a reasonable acquaintance with the accused, and had some opportunity to observe how he acted and talked on other and ordinary occasions.

We are not to be understood as holding that a non-expert witness may not be able to intelligently answer from the acts and conversation of a person with whom he had been but once, that in his opinion, such acts and conversation as he observed and heard showed such person to be in the opinion of witness of unsound mind, or the contrary; but we are laying down the rule that when either party resorts to testimony that the conduct or the conversation of a given person on a given occasion in the opinion of the witness, was normal or abnormal, usual or unusual, that such opinion is inadmissible, unless such witness qualifies by showing himself to have had reasonable opportunities for knowing the normal and usual attitude, acts, and conversation of the party inquired about.   None of said witnesses mentioned, to whom said question was put by the State, showed any reasonable acquaintance with appellant when his mind was in its usual and normal condition, and none of them testified to sufficient facts to justify a comparison between his mind on said occasion and when his brain was in its usual and normal condition.   The fact that insanity was the defense, makes such errors more material.

The charge of the trial court on the question of insanity, is of unusual length.   Great care should be taken to avoid repetition and the insertion of unnecessary details.

For the errors indicated, the judgment of the trial court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

ON REHEARING.

February 18, 1920.

MORROW, Judge.—Responding to the able and forceful presentation of the motion for rehearing on behalf of the State by the Assistant Attorney General and the county attorney of Tarrant County, we have made a careful re-examination of the case.

Touching the criticism of the references in the opinion to the statement of facts, we will not pause to review the office of the statement of facts with reference to questions of law presented on appeal, further than to reiterate what has often been said, that the bill of exceptions should be sufficient without the aid of the statement of facts to disclose the error complained of—Davis v. State, 4 Texas Crim. App., 645—adding that where the record contains a statement of facts, and the bills of exceptions are prepared and filed in accord with the statutes, the court will not feel called upon to give to the rules relating to their construction an effect so restrictive as to defeat the purpose of the law requiring bills of exception. The statute, Article 2059, declares that no form shall be required, but that the objection to the ruling shall be stated with such circumstances, or so much of the evidence, as may be necessary to explain it, and no more, and the whole as briefly as possible. Article 2060 provides that reference may be made to the statement of facts. In a criminal case it is necessary to read the statement of facts to determine the sufficiency of the evidence before an affirmance can be ordered; and touching the practice of this court throughout its history to consider the legal questions presented in the light of the facts, we quote the remarks of a learned law writer: "The Texas court of criminal appeals always considers the entire record, weighing, analyzing, and thoroughly digesting all the evidence before applying the law to the case in hand." Wharton's Criminal Evidence, vol. 1, p. 491, note.

Concerning the rules of practice, it was said in substance by Chief Justice Phillips of the Supreme Court that they are not intended to encumber the courts with technical and arbitrary requirements, or to enjoin such rigid adherence to them as precludes their observance by reasonable and substantial compliance. Railway v. Pemberton, 106 Texas, 466.

Looking alone to the bills of exceptions, we are advised thereby that the witness Estes had known the appellant since his youth; that he visited in the jail the morning after the shooting, and observed his physical condition and his demeanor. He offered to testify that he observed the expression of the eyes of accused; that it was vacant and glaring—"a vacant stare, almost expressionless;" that he "did not appear to be conscious of what was going on, or interested about the presence of the witness, or solicitous for assistance, or anything of that kind;" that compared with his previous condition he was very much reduced in flesh and emaciated, and "he impressed me as being very much torn up;" that he was in a collapsed state physically, very nervous, pale, not able to talk consecutively, not strong and robust as the witness had previously seen him.

Finney was shown by the bill to have visited the appellant at the jail the morning after the shooting, and to have been present

when the appellant was released on bond, to have taken him home with him and kept him in his house from Monday morning until Thursday. This witness, if permitted, would have testified that during this time the appellant appeared physically collapsed, very nervous and weak, pale, and had no color in his face; and would also have given his opinion that during that time his mind was unsound.

It is suggested that tested by the bills of exceptions the court's ruling that neither the witness Estes nor Finney were qualified to give an opinion, because not shown to have possessed such intimate acquaintance or means of observation as would enable them to form an accurate judgment, was correct. To sustain this, the case of Williams v. State, 37 Texas Crim. Rep., 349, is relied on. The evidence proffered in that case was rejected because there were no facts stated upon which it could be based. The court said: "Nothing is stated but the bare fact that they had known him, had spoken to and talked to him, and had some dealings with him. The character of the dealings, the subject of the conversation, whether he talked intelligently or not, in fact nothing of this sort is stated. It is important that the facts upon which the opinion of the witness is given should go to the jury in order that they may have some standard by which to test the value of the opinion given. If the act, conduct, or conversation detailed, to the ordinary understanding, was of a trivial character, it would serve to characterize the opinion given by the witness. On the contrary, if it was of an unusual, eccentric, or extraordinary character, it might be of great value to the jury in passing upon the sanity of the defendant. If the witnesses had stated any fact, such as the conduct of the defendant, conversations with him, some acts of the defendant, however meager they might appear, there would be something upon which to base the testimony—that is, the opinion.

Presiding Judge Hurt, in Burk's case, 38 Texas Crim. Rep., 397: "This is not like the Williams case, 37 Texas Crim. Rep., 348. In that case no facts were stated by the non-experts as the basis of their opinion. Here the witnesses give full details of facts.

It seems apparent from these quotations, that the ruling in Williams v. State, was not based upon the absence of sufficient acquaintance, although it is said therein: "Some of the witnesses had known the defendant for only a brief time, simply acquainted with him, yet they were permitted to give to the jury their opinion as to his sanity without stating any act, conduct, or conversation with him."

It is said by Mr. Underhill in his work on criminal evidence, page 311: "No rule can be laid down as regards the amount of knowledge which the non-expert witness must possess. The weight of the opinion is for the jury," and further "the non-expert must have had some acquaintance with the accused, and some opportunity

to observe his conduct, upon which is based the opinion. If it shall appear *prima facie* that the witness did not have sufficient time for observation his evidence should be excluded."

The Supreme Court of Indiana, in Colee v. State, 75 Ind. Rep., 511, said on the subject: "It is true that a non-expert witness must always state the facts upon which he bases his opinion as to the mental capacity of a defendant in a criminal prosecution, and it is also true that it must appear that he has some knowledge of he acts and conduct of the person upon whose mental condition he declares his opinion. The extent of this knowledge has never been defined, and we cannot frame any general rule which will determine just how much or how little knowledge will entitle the witness' opinion to admission . . . The court cannot decide whether the opinion is of much or little weight; its duty is merely to decide whether such knowledge is shown and such facts stated as entitle the witness to express any opinion at all."

In the state of California a statutory rule obtains to the effect that such opinion may be given alone by an "intimate acquaintance." Construing this statutory rule, the Supreme Court of California has stated that no fixed rule can be laid down to determine who is an intimate acquaintance within the meaning of the statute; and the opinion of witnesses has been frequently admitted in that state, where accompanied with the facts supporting it, on the subject of sanity, when the acquaintance with the party in question extended over a very limited time. See People v. Susser, 142 Cal. Rep., 360; In re Budan Estate, 104 Pacific Rep., 443.

The question of what are adequate means of observation is not a technical one. Bishop's New Crim. Procedure, sec. 679; Williams v. State, 37 Texas Crim. Rep., 351. The fact that no conversation with the appellant was detailed by the witnesses whose opinion was excluded is not controlling. This court, through one of its most accurate and learned judges, said: "The deportment, conduct, employment, manner of speech, habits, and all traits and demeanor" are proper elements in the predicate for non-expert opinions. See opinion of Judge Ramsey, Turner's case, 61 Texas Crim. Rep., 97, 133 S. W. Rep., 1054. In this the previous decisions of this court are but emphasized. Cannon v. State, 41 Texas Crim. Rep., 467; Tubb v. State, 65 Texas Crim. Rep., 622; Lane v. State, 59 Texas Crim. Rep., 603; Burt v. State, 38 Texas Crim. Rep., 397. In fact, such was the view expressed in Williams' case, *supra*, the court adopting a quotation, says: "After all, it is the facts which a witness details, the conduct which he describes, which chiefly and particularly constitute the testimony to be relied on." See the case of People v. Manoogian, 141 Cal. Rep., 593.

In Holland v. Zollner, 102 Cal. Rep., 633, the court said: "The appearance of a person at a given time is one thing, the opinion of a witness as to his mental condition based upon an intimate

acquaintance with him, is quite another," and in People v. McCarty, 115 Cal., 255, a capital case, the jailer who saw the accused on the day of his arrest was permitted to testify that the appellant appeared rational at that time. Buswell on Insanity, p. 255, sec. 247, quotes with approval a decision which contains: "In the case of insanity a witness may state facts, may give the look of the eye and the actions of the man, but unless he is permitted to tell what they *indicate,* or, in other words, be permitted to express an opinion, he cannot convey to the mind distinctly the condition of the man that such acts and looks portray."

In the instant case, one of the witnesses would have testified that he observed the accused the day after the shooting; that in his eyes was a vacant stare; that they were almost expressionless; that he did not appear to be conscious of what was going on. Another said he appeared physically collapsed, nervous and weak, pale, and no color in his face; and based upon his close observation of him while he cared for him in his own house for several days, offered to express the opinion that his mind was unsound. Another said that he appeared collapsed physically, nervous, pale, not able to talk consecutively. It may be conceded that the facts and details set out in the bills of exception are meager. Not more so, however, than were those upon which the witnesses for the State were permitted to express the opinion that appellant was sane. One of these, Willburn, arrested the appellant after the shooting. Asked what appellant said, the witness replied: "Oh, nothing much, he said something like 'I loved those two brown eyes better than I loved my own life;'" that he ran his hand in his pocket and said to Mr. Ellsworth: "I owe you $1.50, and here it is." Another witness, Keller, said that on Saturday before the shooting on Sunday, appellant took supper with the witness and his wife, and later in the evening they took a drive in an automobile; that the appellant didn't talk much, but talked some. Mrs. Keller also gave her opinion upon the same facts. Another witness saw the appellant at about 11 o'clock on Sunday preceding the shooting in the afternoon; testified that while she was otherwise engaged, appellant and her husband had a conversation together about chickens and matters of that kind. The county attorney was asked the following question: "Of course, you took a statement from him that we expect to introduce in evidence here. Did you from his conduct and his conversation there, and his acts in general, notice anything about him that would indicate that his mind was at that time anything other than that of a normal person?"

All of these witnesses, upon the predicate mentioned, were permitted by the court to give their opinion, at least were permitted by the court to answer to the inquiry that they saw nothing to indicate that his mental condition was other than that of a normal person. The question as to the sufficiency of the predicate is

primarily for the court. We confess our inability to discern in what sense the predicate condemned as insufficient with reference to the witness Estes and the witness Finney was inferior to that which prompted the court to admit the opinions of the State witnesses mentioned. The writer is of the opinion that the use of the word "normal" in the inquiry of the State witnesses was not of such consequence as to condemn the question, inasmuch as the jury doubtless understood the inquiry to be whether his appearance was that of a natural man. See Century Dictionary.

It was the theory of the appellant that his mind was rendered unsound on account of his weakened and nervous condition, resulting from sickness aggravated by family troubles threatening separation from his wife and children. This theory was supported by the testimony of witnesses, including his physician. To rebut this theory, the State, among other evidence, used the testimony to which we have adverted. We are aware of no rule of evidence denying the appellant's right to the testimony of Estes to the facts we have quoted, and his opinion thereon; and, considering the manner in which the case was tried, the evidence of Finney should have been received.

From what has been said, it follows that the motion for rehearing should be overruled.

*Overruled.*