JOHN P. COSBY V. STATE.

No. 24323. March 30, 1949.
Rehearing Denied May 25, 1949.

*Collier & Pepper,* by *Morris Pepper,* Houston, for appellant.

*A. C. Winborn,* Criminal District Attorney, *E. T. Branch,* Assistant Criminal District Attorney, Houston, and *Ernest S. Goens,* State's Attorney, Austin, for the state.

GRAVES, Judge.

Appellant was charged with an aggravated assault upon a child; and in a trial before the court, he was found guilty and assessed a penalty of six months in the county jail, and he appeals.

The facts show that an 11-year-old girl was alone in a cleaning and pressing establishment belonging to her mother in Houston; that on or about April 13, 1948, the mother was out delivering clothing and the little girl was using her water colors, painting. Appellant came into this cleaning establishment carrying a raincoat and a pair of trousers. The little girl was seated. He asked her if they could clean the raincoat, and she said, yes, she thought so. She had on shorts at the time. He placed the pants in her lap and pushed his hand on her leg and up towards but not on her privates. She got up and he said, " 'You don't like it, do you?; and I said 'No.' " "I felt embarassed and ashamed; I felt like something dirty and nasty was being done to me. He said, 'Don't tell anyone,' and then he left and I sat back down." It was near closing time. Appellant returned in a few minutes without the raincoat and said he had another pair of pants; that he would go home and get them, but she told him it was closing time and went to locking up the house. Appellant was still standing there near a closet, and as she started to tell him to leave, she saw that he had his pants down and his privates exposed. She then ran out the back way to the home of a lady friend, who came back with her, but appellant was gone.

Appellant had been convicted of lunacy in the county court

of Houston County in the year 1927, and such was agreed to by the state and was also shown by a certified copy of a judgment later introduced. Under such conviction, with no showing of a further restoration to sanity, the burden fell upon the state to establish his sanity at the time of the commission of the above delineated facts.

The first witness presented by the state was Dr. Dwyer, the county physician and a psychiatrist, who testified, on direct examination, that he talked with the appellant about 15 or 20 minutes, long enough to determine whether he knew the difference between right and wrong and was in a position to rationally prepare a defense to any charge lodged against him. It was his opinion that appellant was of sound mind at that time. It was developed, on cross-examination of this witness, that he had made no outside or further examination in this matter save that he had talked to the district attorney's office and they told him something, but what such something was is not shown. Based on such information, the witness discussed these facts with appellant, who answered very intelligently; and the witness then expressed the opinion that appellant was sane at the time of the commission of the alleged offense as well as at the time of this examination.

The above is made the basis of Bill of Exceptions No. 1, mainly complaining of the fact that the expert received some information from the district attorney's office which, of course, could only be hearsay, and that therefore the opinions expressed by such expert should have been withdrawn from the jury.

In the case of Williams v. State, 37 Tex. Cr. R. 348, 39 S. W. 687, to which we are cited, Judge Henderson, in a long opinion, held that an expert witness cannot give his opinion on the sanity of a person where he has heard only a part of the evidence of one witness, supplemented by having read the testimony published in a newspaper of a former trial thereof. With this holding we have no disagreement. To the same effect is the cited case of Webb v. State, 9 Tex. App. 490, holding that a hypothetical question should embrace all the testimony pertinent to the issue of sanity and not merely to a portion thereof.

This bill of exception is not complete in that it is not shown what statement was made to Dr. Dwyer in the district attorney's office. Surely the witness was entitled to know with what offense the appellant was charged before he began an examination of him, and surely he knew before he had finished this examination what such offense was because the doctor said that

appellant talked freely and intelligently about the facts, and the expert's questions were based on information which he had received and had in his possession. This testimony was not based upon a hypothetical question. It was based upon a direct examination of appellant and directed along lines indicated by information received by the expert as to the facts alleged against the appellant. The objection lodged against this testimony was relative to a hypothetical question being propounded to this witness and his answer thereto being based partially on hearsay testimony, and the above-quoted cases merely support that theory. They are not pertinent to the testimony given by the doctor in his first appearance on the witness stand.

However, the bill in this case, if evidencing any error at all, is rendered nugatory by the recall of Dr. Dwyer by appellant at the close of the testimony herein and the propounding to him of a hypothetical question, which question contained the full testimony produced herein, and his conclusion therefrom, that conclusion being that this complained of conduct evidenced a sex-perverted mind, not an insane condition, but one who knew the difference between the right and wrong of the act. We think the last testimony of the doctor, being brought forth by appellant and being practically the same as that shown in Bill No. 1, cured the error, if any, found in such, and we overrule this bill.

There was no further testimony relative to insanity save the judgment of 1927, and that of appellant's mother, who testified relative to certain of his peculiarities, his fear of persecution, his drinking and nervousness, the nervousness causing the drinking and the drinking causing the nervousness, and he having been drinking on the day of this charged offense; that at times the appellant did not seem right, but acted differently from a normal person when he was drinking, although she did not know whether or not he knew right from wrong at the date of this alleged offense.

Bill No. 2 is practically the same as Bill No. 1, and it is shown therein that after there had been witnesses heard herein, the appellant called Dr. Dwyer and propounded to him a hypothetical question embodying all the proven facts herein, and finally elicited from the doctor that he regarded such hypothetical question as evidencing the acts of an abnormal person but not that of an insane person; that normal persons are not insane but that not all abnormal persons are insane; that he regarded the acts of this hypothetical described person as showing that he knew the difference between the right and the wrong of

the alleged acts. The bill further shows that no one testified that appellant was insane at the time of the alleged acts.

Bill No. 3 complains because the trial court refused to allow the little girl to testify on cross-examination that when appellant placed the pair of pants in her lap, "could he not have accidently touched her leg?" The bill does not show what her anticipated answer would have been, and we are left to surmise what she would have said. This matter was but a surmise and also called for a conclusion of the witness. We think the court was correct in not allowing same to be answered. Appellant did not take the stand, and there was no testimony relative to an accident or unintentional mistake. See Woodson v. State, 24 Tex. App. 153, 6 S. W. 184; Branch's Ann. Tex. P. C., p. 135, sec. 212; Moore v. State, 40 Tex. Cr. R. 438, 50 S. W. 942.

It is also to be noted that there was no testimony introduced relative to appellant's insanity save the judgment of the Houston County court in 1927.

The remaining Bill No. 4 is superfluous and there is no need therefor in the record. It merely relates to the trial court's action in overruling the amended motion for a new trial.

We think the state's testimony is sufficient to overcome the presumption of insanity as established by the judgment of the Houston County Court, and finding no error shown in the record, the judgment is affirmed.

### ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

In his motion for a rehearing appellant earnestly contends that we erred in the original dispostion of this case in this, that we held that the opinion expressed by Dr. Dwyer relative to the sanity of appellant was admissible notwithstanding it was based partly on his examination of appellant and partly on hearsay of what he had been told in the district attorney's office and, therefore, our holding in this case is in conflict with the holding of this court in the case of Williams v. State, 37 Tex. Cr. R. 348, 39 S. W. 687. We did not hold that it would be permissible for a psychiatrist to express an opinion relative to the sanity or insanity of a person based upon his examination of such person for a short time and from hearsay. We did not intend to convey such an idea, nor do we wish to be so understood. What we did hold, and intended to hold, was that if that part of the state's

testimony is eliminated from the record, there is still sufficient evidence before the court to raise the issue of his sanity because appellant recalled the witness, Dr. Dwyer, and propounded hypothetical questions to him based on facts before the court, to which the witness replied that appellant was a sex pervert and had an abnormal mind; yet, a sex pervert with an abnormal mind is not insane to the extent that he does not know the right or the wrong of the particular act he is performing. In the eyes of the law, a person who has sufficient mental capacity to be able to distinguish between what is right and what is wrong is responsible for his misdeeds.

Appellant's mother testified that he was an abnormal person; that he acted peculiarly at times; that at times he believed someone was after him and he would lock all the doors and windows to his room, yet he knew what was right and what was wrong unless he was drinking; that on the day of the alleged offense he was drinking. No other evidence touching the question of his sanity or insanity was introduced on the trial. Thus it will be noted that whether or not appellant, although abnormal, had sufficient capacity to distinguish between what is right and what is wrong was a question of fact for the determination of the court, since he had waived a trial by jury; and the court's decision of the issue is binding on this court as much so as if it had been submitted to and decided by a jury. We do not think that our original opinion overrules the opinion delivered by this court in the case of Williams v. State, supra, or that it is in conflict therewith.

Dr. Dwyer's first statement relative to appellant's sanity related to a personal examination of appellant prior to the placing of any testimony on the stand and related mainly to appellant's ability to rationally prepare a defense to any charge lodged against him. It was made known to the doctor that appellant had previously been adjudged insane, and after being called by the district attorney's office and requested to make an examination of the appellant, he knew at such time that he had been confined in a mental institution. This knowledge was doubtless hearsay, but was merely preliminary to the examination and certainly could not have unfavorably affected such examination. In considering such preliminary examination, we would have to go afield to say that such a conversation with the district attorney contained any hearsay matters such as are found proven in the Williams case, supra.

After the question of the ability to rationally conduct a defense was disposed of, the state offered its testimony, and ap-

pellant's attorney introduced the commitments relative to appellant's unsound mind, dated October 21, 1927, in Harris County, Texas, whereupon appellant's mother testified as is shown in the original opinion. Thereafter, Dr. Dwyer was called to the stand and interrogated by appellant's attorney, who propounded to the witness a hypothetical question based on the history of this case, and of course, all hearsay. The doctor answered that such described person was mentally ill, a sex pervert, but not necessarily an insane person; that he would diagnose such person abnormal, but not necessarily insane. A sex pervert is not normal, but he is not insane.

In the Williams case, supra, the expert was not only testifying from a hypothetical question, but also from his having heard all the testimony of a previous trial of that same case, also from having read the testimony as published in the Dallas News of the former trial, and also from having heard a portion only of the testimony in the trial wherein he was then testifying. In that case, we held that the witness was testifying relative to hearsay testimony not included in the hypothetical question, which went far beyond the bounds of a hypothetical question, and was based upon hearsay to a large extent as well as knowledge of the witness as to the proven facts. This present decision does no violence to such a doctrine.

The motion will be overruled.