In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-01-00697-CR
____________

GARY ALAN DASHIELD, JR., Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the 228th District Court 
Harris County, Texas
Trial Court Cause No. 839,088



EN BANC OPINION
          Appellant pleaded not guilty by reason of insanity to aggravated assault with
a deadly weapon. After appellant waived his right to a jury trial, the trial court found
him guilty and assessed punishment at 20 years’ confinement. We affirm.
Background
          Appellant engaged in an unprovoked attack on a convenience store clerk, Dai
Trang Nguyen, the complainant. In his sole point of error, appellant contends that the
evidence is factually insufficient to support the trial court’s rejection of his insanity
defense. 
Standard of Review
          A defendant cannot be convicted of a criminal offense if he is legally insane
at the time of the crime. Tex. Pen. Code Ann. § 8.01(a) (Vernon 2003). The
standard is whether “at the time of the conduct charged” the defendant, “as a result
of severe mental disease or defect, did not know that his conduct was wrong.” Id.
          The issue of insanity lies within the province of the jury (or, as here, the judge
as sole fact-finder) to decide, not only as to the credibility of witnesses and the weight
of the evidence, but also as to the limits of the defense. Bigby v. State, 892 S.W.2d
864, 878 (Tex. Crim. App. 1994). When we review the fact-finder’s rejection of an
insanity defense, we must determine whether the finding is so against the great weight
and preponderance of the evidence as to be manifestly unjust. Id. at 875. 
Evidence Presented
          The complainant was the only eyewitness who testified. She testified that, on
April 4, 2000, appellant came into the convenience store where she worked. 
Appellant asked if the complainant had seen “a lady in pink come over here.” She
answered “no,” and appellant left. Two hours later, appellant returned to the store
with a brick in his hand. He waited in line while the complainant helped other
customers. Appellant approached the counter, laid the brick on it, and then picked
it up several times as if to throw it at the complainant. When the complainant reached
for the telephone, appellant threw the brick at her, knocking her out. She suffered a
broken jaw and facial lacerations. The complainant testified that, the first time
appellant came into the store, she thought his question about the lady in pink was
strange, but he looked normal. “But the second time he [sic] a little bit crazy, like,
he angry,” although the complainant had done nothing to provoke him. A lady
dressed in pink had come in the store, but police could not establish any relationship
between appellant and the lady in pink. 
          The store’s videotape was admitted as State’s exhibit 5. It shows that, as
appellant left the store the first time, he looked at the complainant and said, “You’re
fixing to go down.” When appellant returned, he approached the store four times
before going in, each time tossing the brick in his hand. Once inside, he paced
around, stood in line, disappeared from the camera view, and then reappeared at the
counter. Appellant feigned with the brick as if to throw it at the complainant, and
then threw it at her. The brick hit the complainant, and she fell to the ground. 
Finally, the videotape shows appellant muttering something and leaving the store.
          Houston Police Officer Millard F. Waters interviewed appellant 10 days after
the assault at the Harris County Psychiatric Center, where appellant was being held. 
Officer Waters testified that appellant was lucid, knew his whereabouts, and
understood why Waters was there. Officer Waters also testified that appellant had
made some responses that “were not in reference” to questions asked of him.
          Appellant’s sole witness was Dr. Ramon A. Laval, Ph.D., a forensic
psychiatrist in the psychiatric unit of the Harris County jail for the Department of
Mental Health and Mental Retardation (MHMRA). Dr. Laval acts as a consultant and
is often appointed by the court to evaluate inmates’ competency and sanity. Dr. Laval
had been a consultant for the MHMRA since 1985. He explained that it is only in
“very, very, very few occasions—less than one in a thousand—that a person would
justifiably be found insane at the time of the alleged offense.”
          Dr. Laval examined appellant on September 28, 2000, pursuant to defense
counsel’s motion. He concluded that appellant was psychotic and incompetent to
stand trial. After a competency hearing, the jury found appellant mentally
incompetent, but also found a substantial probability that he would attain competence
within the foreseeable future. A few months later, after a period of observation and
treatment, the MHMRA reported to the trial court that appellant was competent to
stand trial.
          On January 24, 2001, Dr. Laval re-examined appellant and reviewed
appellant’s records from the Harris County Psychiatric Center, where appellant had
been admitted after the offense. Dr. Laval testified that appellant had a history of
previous psychiatric episodes. He concluded that appellant was competent to stand
trial, but was insane at the time of the offense. 
          Although Dr. Laval repeatedly expressed his opinion that appellant was insane
at the time of the offense, his testimony contained some conflicting and inconclusive
statements. For example, Dr. Laval testified that appellant’s behavior on the store
videotape was “not consistent” with schizophrenia or other major mental disorders:
“Most people who suffer from a mental illness do not commit this type of offense. 
So, it has nothing to do with a mental illness.” Despite this inconsistency, however,
Dr. Laval did not change his opinion. 
          Additionally, Dr. Laval testified about his uncertainty regarding exactly when
appellant could not discern between right and wrong: “So, I don’t know whether five
minutes prior or 20 minutes prior he would have known right from wrong. Insanity
or sanity is in reference to a particular act, not in reference to just any type of
psychiatric condition. So, I couldn’t tell you.” He further testified that appellant was
of normal intelligence and was not retarded, and that it was possible appellant was
“just plain mean.” 
          Moreover, Dr. Laval acknowledged the dispute—regarding the exact diagnosis
of appellant’s mental condition—among other mental health professionals who had
examined appellant. He explained that “it is not an exact science.” He testified that
there has been “from time to time dispute as to actually what he was suffering from,”
in terms of mental disease or defect, namely whether it was schizoaffective disorder,
bipolar disorder, manic depression, schizophrenia, or a combination thereof. He also
conceded that persons with such mental illnesses are not necessarily insane at the
time of an offense. 
Insanity
          Insanity is an affirmative defense. Tex. Pen. Code § 8.01. A defendant bears
both the burden of proof and the burden of persuasion. Meraz v. State, 785 S.W.2d
146, 150 (Tex. Crim. App. 1990); Taylor v. State, 856 S.W.2d 459, 461 (Tex.
App.—Houston [1st Dist.] 1993), aff’d, 885 S.W.2d 154 (Tex. Crim. App. 1994). 
The purpose of the insanity defense is to determine whether the accused should be
held responsible for the crime, or whether his mental condition excuses him from
such responsibility. Graham v. State, 566 S.W.2d 941, 948 (Tex. Crim. App. 1978);
Taylor, 856 S.W.2d at 468. To establish the defense of insanity, the defendant must
prove by a preponderance of the evidence that (1) because of severe mental disease
or defect, (2) he did not know right from wrong at the time of the offense. Tex. Pen.
Code § 8.01. 
          Expert witnesses, although capable of aiding the trier of fact in determining the
issue of insanity, do not dictate the results. Graham, 566 S.W.2d at 948-49. Thus,
expert testimony on the issue of appellant’s ability to determine right from wrong
does not establish insanity as a matter of law. Id. at 951; Torres v. State, 976 S.W.2d
345, 347-48 (Tex. App.—Corpus Christi 1998, no pet.). The ultimate issue of
criminal responsibility is beyond the province of an expert witness; otherwise, the
issue “would be tried in hospitals rather than in courts.” Graham, 566 S.W.2d at 949. 
While expert testimony may be helpful to the trier of fact, the ultimate determination
of insanity is outside the purview of medical experts and should be left to the
discretion of the trier of fact. Id. at 952-53. 
          It is not necessary for the State to present expert medical testimony that a
defendant is sane in order to counter defense experts. Id. at 950. The trier of fact
may accept or reject in whole or in part the testimony of expert medical witnesses. 
Id. at 950-51. Rarely will the trier of fact’s findings regarding an insanity defense be
overturned on appeal. Id. at 953. Accordingly, because the trial court was the sole
judge of the credibility and weight to be given the testimony, the court was free to
believe or disbelieve all or part of any witness’s testimony. Alvarado v. State, 853
S.W.2d 17, 23 (Tex. Crim. App. 1993). 
Analysis
          In addition to the expert testimony, the trial court heard lay testimony from the
complainant and a police officer. The trial court also watched the videotape, which
showed the offense and contained audio portions of the words spoken by appellant. 
There was evidence in the record to indicate that appellant approached the store four
times before entering, placed the brick on the counter, picked it up several times as
if to throw it at the complainant, and then threw the brick at the complainant. 
Appellant’s equivocation could give rise to an inference that he was debating the
rectitude of his assault, and thus, did appreciate the difference between right and
wrong. He then left the store, which gives rise to a fair implication that he attempted
to flee the scene before the police arrived. The trier of fact may consider appellant’s
demeanor before and after the offense, Schuessler v. State, 719 S.W.2d 320, 329 (Tex.
Crim. App. 1986), overruled on other grounds, Meraz, 785 S.W.2d at 155, and
appellant’s attempts to evade police. Murray v. State, 182 S.W.2d 475, 477 (Tex.
Crim. App. 1945). 
          The dissent bases its disposition on the fact that the expert’s testimony was not
controverted by the State. We do not believe that fact to be controlling. The State
is not required to present expert medical testimony. Wade v. State, 630 S.W.2d 418,
419 (Tex. App.—Houston [14th Dist.] 1982, no pet.). The issue of sanity is a
question for the finder of fact, who may believe or disbelieve experts or lay witnesses
as it chooses. Id. As the Court of Criminal Appeals explained, “The doctors’
conclusions in terms of the statutory defense (as distinguished from their descriptions
of the diagnostic process and results, and other properly medical matters) are of
negligible weight in considering this issue.” Graham, 566 S.W.2d at 951. Opinion
testimony does not establish material facts as a matter of law. Id. (citing Muro v.
Houston Fire & Casualty Ins. Co., 329 S.W.2d 326 (Tex. Civ. App.—San Antonio,
1959, writ ref. n.r.e.)). 
          We disagree with the dissent that the “relevant evidence leads to only one
conclusion”—that appellant was legally insane at the time of the assault. The record
in this case contains controverting evidence as to whether appellant knew the
difference between right and wrong at the time of the offense. The trial court had the
benefit of observing appellant’s actions and demeanor in a videotape of the incident,
hearing appellant’s words in the audio portion of the tape, and listening to testimony
from an eyewitness’s account of the events. The trial court had sufficient information
from appellant’s words, actions, and demeanor during the offense to determine that
appellant was legally sane. The only evidence suggesting that appellant was insane
came from appellant’s expert, whom the trial court found unpersuasive. There was
no other expert testimony corroborating Dr. Laval’s opinion. As noted above, the
State was not required to present its own expert. See Wade, 630 S.W.2d at 419. 
          Credibility determinations must be left to the fact-finder at trial. The trial court
reasonably could have resolved the conflicting evidence regarding insanity by
concluding that appellant had not met his burden of proving insanity by a
preponderance of the evidence. Therefore, the trial court’s decision is not so against
the great weight and preponderance of the evidence that it is clearly wrong.


 
Conclusion
          We overrule the sole point of error and affirm the judgment of the trial court.
 
 
                                                                                  Adele Hedges
                                                                                  Justice
 
Panel consists of Justices Hedges, Keyes, and Duggan.


 

En banc consideration was requested.

A majority of the justices of the Court voted to consider the case en banc.

The en banc Court consists of Chief Justice Radack and Justices Hedges, Taft,
Nuchia, Jennings, Keyes, Alcala, Hanks, Higley, and Duggan.

Justice Hedges, writing for the majority of the en banc Court, joined by Chief Justice
Radack and Justices Taft, Nuchia, Jennings, Alcala, Hanks, and Higley.

Justice Keyes dissenting, joined by Justice Duggan.

Publish. Tex. R. App. P. 47.2(b).