# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00304-CR

Roy Lynn McDavid, Appellant

v.

The State of Texas, Appellee

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
## NO. 3022275, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Roy Lynn McDavid appeals from his conviction on two counts of aggravated assault with a deadly weapon. *See* Tex. Pen. Code Ann. § 22.02 (West Supp. 2005).[1] The charges arose from appellant's two-hour assault of his girlfriend with various objects, including a Maglite flashlight (count I) and a leather strap (count II). Appellant pled not guilty and waived his right to a jury trial. After a bench trial, the court found appellant guilty, found the habitual offender enhancement paragraphs to be true, and sentenced him to 30 years' confinement on each count, to run concurrently. *See id*. § 12.42(d) (West Supp. 2005). Appellant contends in three issues that the trial court erred in finding him guilty because (1) the court violated his due process rights by not holding a hearing or articulating a ruling on appellant's *pro se* notice of insanity defense, (2) the

---

[1] Although the offense at issue occurred in October 2002, we will cite to the current versions of statutes if no substantive amendments have been made that affect this appeal.

evidence was factually insufficient to show that appellant was sane at the time of the offense, and (3) the evidence was insufficient to establish the requisite *mens rea* for criminal liability. We will affirm.

## BACKGROUND

Appellant testified that, on October 18, 2002, he and his girlfriend, Audra Morris, "got into an altercation" in the Winnebago where they lived. Appellant, who claims to suffer from paranoid schizophrenia, testified that Morris cut him on the hand and arm with a knife and that "[w]hen she done that, I blacked out. I don't even know nothing else that really happened. I just lost my mind." Appellant further testified that he had "smoked a joint that had the embalming fluid in it, that's when I started losing my mind because I had been up about seven days. I was on speed, crack cocaine, whiskey, beer, weed, and that. . . . I was off my medication[2] and doing all the drugs. . . . When it all happened, I totally blacked out. I smoked that wet [embalmed joint], I lost my mind. I ain't never smoked it before." Near the end of trial, appellant's counsel attempted to clarify appellant's allegation of self-defense by asking him, "You are trying to say that when she cut you, that's what caused you to lose track of what you were doing?" Appellant responded, "I was already out of my mind because I had never smoked that stuff."

Morris testified that she and appellant started arguing because she told him that she was going to move out. She "could tell that he was on speed." "He got mad . . . , started hitting me . . . , [and] told me if I left it would be in a trash bag." Morris testified that appellant began slapping

---

[2] Appellant claimed that Morris, an admitted drug user, would frequently steal his prescription medications. Appellant's mother's testimony corroborated his allegation.

2

her with his hands, then progressed to whipping her with a leather strap, followed by beating her in the head with a metal flashlight—"one of them the cops carry, the long ones, the Maglites." At one point, a neighbor knocked on the door "asking what was going on." Morris testified that appellant locked her in the bathroom and told the neighbor they were fighting. Once the neighbor left, he let Morris out and continued beating her. Although appellant claimed to have "blacked out," he recalled that "[when the neighbor] came to the door, Audra wasn't locked in the bathroom. She was sitting right there."

Morris testified that the assault lasted about two hours. Afterwards, she told appellant she was in pain, and "he decided that it would be best if he took me to the hospital." Appellant testified that he "snapped back out of it" and realized he "had made a mistake," so he drove Morris to the hospital and dropped her off. Officer Kenneth Saffel, who met with Morris at the hospital on the night of the assault, testified that she had "[obvious] bruising and lacerations. . . . There were multiple bruises all over her body. It is one of the worse (sic) beatings I had ever seen at that time in my career." Officer Robert Mitchell, who met with Morris the next day at the SafePlace shelter, testified that "[s]he had a cast on her arm . . . [and] every visible part of her body pretty much was bruised, deeply bruised, dark purple bruising. . . . [H]er ribs may have been broken. Her wrist was broken. Her pinky was broken." The photographs admitted into evidence confirm the severe nature of Morris's injuries.

In closing, appellant's counsel argued, "We would ask the Court to take into consideration the fact that Mr. McDavid's acts were not intentional." To support his argument, counsel cited the unavailability of appellant's medications and Morris's stabbing of him. Counsel did not raise the issue of insanity at any point other than filing a pretrial motion requesting the court

to "authorize the expenditure of up to $2000.00 to obtain the services of a psychiatrist or psychologist or other expert on offenders with mental health problems and histories." Although the trial court granted this motion, the record does not reflect that appellant actually obtained the services of a mental health expert, and no expert was called to testify.

Appellant, however—in addition to his testimony that he was "insane" and had "lost his mind" at the time of the offense—filed a *pro se* pretrial notice of intent to present an insanity defense and a *pro se* pretrial motion for a preliminary hearing on his sanity during the criminal act. He attached to these filings a document from the Travis County Sheriff's Department titled "Psychiatric Treatment Referral," dated March 4, 2004. The form identifies appellant and states, "While incarcerated . . . you received psychiatric treatment for the following diagnosis:," and "schizophrenia w/ panic d/o [disorder]" is written in. The form also reflects that, starting in early 2004, appellant began taking four different medications for this disorder. From the record, it appears that the trial court did not hold a hearing or articulate a specific ruling on the issue of appellant's sanity.

After appellant was adjudged guilty and sentenced to 30 years' confinement on both counts, he filed a motion for new trial, which was overruled by operation of law. *See* Tex. R. App. P. 21.8(c). This appeal followed.

## ANALYSIS

Appellant urges this Court to reverse his conviction on the grounds that (1) his due process rights were violated by the trial court's failure to act on his notice of insanity defense, (2)

4

the evidence was factually insufficient to show appellant was sane, and (3) the evidence was insufficient to establish the requisite *mens rea*. We will address each in turn.

### Insanity Defense

Section 8.01(a) of the penal code provides that "[i]t is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." Tex. Pen. Code Ann. § 8.01(a) (West 2003). Pursuant to article 46.03 of the code of criminal procedure, "a defendant planning to offer evidence of the insanity defense shall file a notice of his intention to offer such evidence . . . at least 10 days prior to the date the case is set for trial." *See* Act of May 18, 1977, 65th Leg., R.S., ch. 596, § 2, 1977 Tex. Gen. Laws 1458, 1467-69 (formerly Tex. Code Crim. Proc. Ann. art. 46.03, § 2(a) (West 1979)).[3] If competent evidence is offered in support of the insanity defense, then the trier of fact shall determine and include in the judgment whether the defendant is guilty, not guilty, or guilty by reason of insanity. *Id*. § 1(a)-(b). Section 46.03 also provides a trial court with discretion to appoint mental health experts to examine the defendant and to testify thereto. *Id*. § 3(a).

Appellant claims that he had a due process right to a hearing and a ruling on the issue of his sanity, as raised by his *pro se* notice of insanity defense and his *pro se* motion for a

---

[3] In 2005, the legislature repealed article 46.03 and amended the code of criminal procedure to add "Chapter 46C: Insanity Defense," which applies "only to an offense committed on or after the effective date of this Act. An offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose." Act of May 27, 2005, 79th Leg., R.S., ch. 831, §§ 1, 2, 5, 2005 Tex. Gen. Laws 2841, 2853-54. Because the 1979 version of the statute was the law in effect when appellant committed this offense on October 18, 2002, that law will be cited herein.

preliminary hearing on insanity.[4]  However, nothing in either section 8.01 or in article 48.06 requires the trial court to hold a preliminary hearing or make an express ruling on a defendant's affirmative defense that he was insane at the time of the offense.  *See* Tex. Pen. Code Ann. § 8.01(a); Tex. Code Crim. Proc. Ann. art. 46.03.  In fact, the court of criminal appeals addressed this issue and expressly held that defendants are not entitled to a separate hearing on the issue of insanity.  *Nilsson v. State*, 477 S.W.2d 592, 599 (Tex. Crim. App. 1972).  In *Nilsson*, the defendant claimed "that he was deprived of due process by the failure of the trial court to conduct a separate hearing to determine his sanity at the time the offense was committed."  *Id*.  The court held that this affirmative defense, which questions a defendant's mental state at the time of the offense, is unlike the issue of whether a defendant is presently competent to stand trial.  *Id*.  The court therefore held that, because "it would be impossible to separate the factual context in which an offense was created from a determination of the state of mind of the accused, . . . [the defendant] was not entitled to a separate hearing on the issue of insanity as a defense."  *Id*.

Moreover, despite his claim that the trial court erred by "not considering" his notice of insanity defense, appellant received what he was entitled to under article 46.03.  Filing such a notice provides a defendant with the right to present evidence on the issue of insanity and for the trier

---

[4] In response to appellant's first issue, the State urges that the trial court had no duty to consider appellant's insanity defense because all of appellant's *pro se* filings were made after trial counsel had been appointed to him, and the law is clear that defendants have "no absolute right to hybrid representation."  *See Hathorn v. State*, 848 S.W.2d 101, 123 n.12 (Tex. Crim. App. 1992).  We need not reach the issue because it is within a trial court's discretion to entertain the arguments of both defendant and counsel.  *Id*.; *see also Johnson v. State*, 760 S.W.2d 277, 291 (Tex. Crim. App. 1988) (Onion, J., concurring).  Under the facts of this case, it is also unnecessary to address appellant's counter-response that hybrid representation should always be permitted when the issue of insanity is raised.

of fact to weigh that evidence when considering its determination of guilt. Tex. Code Crim. Proc. Ann. art. 46.03, §§ 1(a)-(b), 2(b). Also, the presentation of an insanity defense allows the court to appoint mental health experts. *Id*. § 3(a). Here, the trial court authorized $2000 for the expense of a mental health expert and permitted appellant to offer evidence, by way of his own testimony, about whether he was insane at the time of the offense. Because this was a bench trial, appellant's affirmative defense did not have to be formally "submitted" to the fact finder as contemplated in section 1. *See id*. § 1(a). Rather, it is implicit in the court's allowance of appellant's testimony that the court considered the defense in adjudicating guilt. As the statute requires, with this evidence before it, the court then determined that appellant failed to satisfy his burden of proof on the affirmative defense and, accordingly, found him "guilty" rather than "not guilty by reason of insanity." *See id*. § 1(b); *Martinez v. State*, 867 S.W.2d 30, 33 (Tex. Crim. App. 1993) (defendant carries burden to prove insanity by preponderance); *see also Cosby v. State*, 220 S.W.2d 471, 474 (Tex. Crim. App. 1949) (where defendant "waive[s] a trial by jury . . . , court's decision of the issue [of insanity] is binding on [appellate] court as much so as if it had been submitted to and decided by a jury").

Because appellant was not entitled to a separate hearing on his insanity defense and because the record reflects that the trial court considered his defense and determined that it was not proven, appellant's first issue is overruled.

### Finding of "sanity"

Appellant next contends that the evidence is factually insufficient to support a finding that he was sane at the time of the offense. In making this argument, however, appellant forgets that

defendants are presumed to be sane and that the State carries no burden to prove sanity. *Manning v. State*, 730 S.W.2d 744, 748 (Tex. Crim. App. 1987); *Sims v. State*, 807 S.W.2d 618, 626 (Tex. App.—Dallas 1991, pet. ref'd). Instead, a defendant carries the burden of proof on his affirmative defense to prove by a preponderance of the evidence that he was insane during the commission of the offense. Tex. Pen. Code Ann. § 2.04 (West 2003); *Martinez*, 867 S.W.2d at 33.[5]

Even if we construe appellant's second issue as a claim that the trial court, as the trier of fact, erred in determining that appellant failed to satisfy his burden on insanity, the record does not support a reversal of the court's determination. When a court of appeals is called upon to review whether the defendant has proved his affirmative defense of insanity by a preponderance of the evidence, the correct standard of review is whether, after considering all of the relevant evidence, "the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust." *Bigby v. State*, 892 S.W.2d 864, 875 (Tex. Crim. App. 1994) (quoting *Meraz v. State*, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990)). Under this standard, we must affirm the judgment if a rational trier of fact could have determined that appellant failed to prove by a preponderance of the evidence that, at the time of the offense, as a result of severe mental disease or defect, he did not know his conduct was wrong. Tex. Pen. Code Ann. § 8.01(a); *Patel v. State*, 787 S.W.2d 410, 412 (Tex. Crim. App. 1990). Where conflicting evidence on the issue of insanity is presented, determinations regarding the weight and credibility of that evidence should be resolved by the fact finder, and we defer to those decisions because the fact finder has the benefit of observing the

---

[5] This is true unless a prior, unvacated adjudication of insanity is shown; then the State must prove the accused's sanity at the time of the offense beyond a reasonable doubt. *Manning v. State*, 730 S.W.2d 744, 748 (Tex. Crim. App. 1987). Here, there is no evidence that appellant was previously adjudicated insane. Thus, the burden remained on appellant.

witnesses' actions and demeanor. *Dashield v. State*, 110 S.W.3d 111, 116 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *see also Cosby*, 220 S.W.2d at 474 (in bench trial, court's decision on issue of insanity is entitled to same deference that would be afforded to jury's).

Here, although appellant testified that he suffered from paranoid schizophrenia, he also blamed his "blacking out" and "losing of his mind" on the fact that, after having "been up about seven days," he smoked a "joint" laced with embalming fluid and was also "on speed, crack cocaine, whiskey, [and] beer." The affirmative defense provided in section 8.01(a) does not protect defendants who claim that they were temporarily insane as the result of *voluntary* intoxication. Tex. Pen. Code Ann. §§ 8.01(a), 8.04 (West 2003); *Taylor v. State*, 885 S.W.2d 154, 156 (Tex. Crim. App. 1994); *Long v. State*, 764 S.W.2d 30, 31 (Tex. App.—San Antonio 1989, pet. ref'd) (uncontroverted evidence that defendant was voluntarily intoxicated by drug use at time of offense "demolishe[d] the defense" of insanity).

Furthermore, evidence was presented demonstrating that appellant was aware that his actions were wrong; namely, (1) during the commission of the offense, appellant was interrupted by a concerned neighbor and he lied to her about what was taking place inside the Winnebago so that she would go away, (2) the offense lasted for two hours, making it unlikely appellant would have been unaware of his actions the entire time, and (3) appellant testified that, when he was finished assaulting Morris, he realized he had made a mistake and drove her to the hospital. Even if his claim of having "blacked out" were believed, the affirmative defense of insanity is not established by a defendant's claim to have been unconscious or semiconscious during the offense. *Medenhall v. State*, 77 S.W.3d 815, 818 (Tex. Crim. App. 2005).

Thus, considering all of the relevant evidence, the trial court (as the fact finder in this bench trial) reasonably could have concluded that appellant did not meet his burden of proving insanity by a preponderance of the evidence, and we defer to the court's resolution of any conflicting evidence on the issue of insanity. *See Dashield*, 110 S.W.3d at 116. Therefore, because the trial court's decision was not so against the great weight and preponderance of the evidence as to be manifestly unjust, appellant's second issue is overruled.

### Finding of "mens rea"

In his final issue, appellant challenges the sufficiency of the evidence to establish *mens rea* based on his testimony that he had "blacked out" and was therefore unconscious or semiconscious during the offense. *See Medenhall*, 77 S.W.3d at 818 (proper defense for defendant's claim that he was unconscious is lack of *mens rea*, not insanity); *see also* Tex. Pen. Code Ann. § 6.02 (West Supp. 2005) (culpability required for criminal liability). For a defendant to be proven guilty beyond a reasonable doubt of aggravated assault with a deadly weapon, the State has the burden to show that the defendant acted either intentionally, knowingly, or recklessly. *See* Tex. Pen. Code Ann. §§ 22.01, .02.

Whether an accused acted with the requisite culpability is a question to be determined by the trier of fact. *Pine v. State*, 889 S.W.2d 625, 629 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (citing *Hemphill v. State*, 505 S.W.2d 560, 562 (Tex. Crim. App. 1974)). Culpability may be inferred from the conduct of, remarks by, and circumstances surrounding the acts engaged in by the defendant. *Id*. "Proof of a culpable mental state generally relies upon circumstantial evidence," and "the trier of fact may infer intent from any facts in evidence which tend to prove existence of such

intent." *Skillern v. State*, 890 S.W.2d 849, 880 (Tex. App.—Austin 1994, pet. ref'd) (citing *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991)).

We review the issue of culpability for legal and factual sufficiency. *Id.* The inquiry on review of the legal sufficiency of the evidence to support a criminal conviction is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). In a factual-sufficiency analysis, the evidence is viewed in a neutral light, and we must defer to the fact finder's determinations, particularly in matters of credibility. *Id.* at 799. The evidence may be deemed factually insufficient either if (1) the supporting evidence, considered alone, is too weak to support the finding beyond a reasonable doubt, or (2) the contravening evidence is so strong that the State could not have met its burden of proof. *Id.* (citing *Zuniga v. State*, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004)).

Here, the indictment stated that appellant did "intentionally, knowingly, and recklessly cause bodily injury to Audra Morris by hitting [her] with a flashlight . . . [and] with a belt and strap," both of which were used and exhibited as deadly weapons. Appellant does not deny that he inflicted the serious bodily injury on Morris by using a Maglite and a leather strap; he contends only that he was in some state of unconsciousness during the commission of these acts. To any extent that this lack of consciousness was the result of appellant's admitted voluntary intoxication, that is insufficient to show a lack of culpability because "[a] long line of cases have consistently held that the evidence of appellant's intoxication, if any, does not negate the elements of intent or knowledge." *Smith v. State*, 968 S.W.2d 490, 494 (Tex. App.—Texarkana 1998, no pet.) (citations omitted).

11

Moreover, as the sole judge of the weight and credibility of the evidence, the trial court was free to disbelieve appellant's claim that he "blacked out." There was evidence demonstrating that appellant was not unconscious, but instead intentionally or knowingly assaulted Morris. First, Morris testified that, immediately preceding the assault, appellant warned her that the only way she would be leaving the Winnebago was "in a trash bag." Second, by appellant's own testimony concerning the neighbor's intervention, he was aware of the events taking place. Third, appellant also testified that he assaulted Morris in defense of her cutting him, which would be purposeful and conscious conduct rather than the result of being unconscious. Finally, from the facts that the assault lasted for two hours and that appellant then took Morris to the hospital, the trial court could infer that appellant acted intentionally or knowingly.

This case is similar to *Wade v. State*, 630 S.W.2d 418 (Tex. App.—Houston [14th Dist.] 1982, no pet.). After determining that Wade failed to carry his burden on the affirmative defense of insanity, the Houston court addressed whether the evidence was sufficient to establish that Wade acted with the requisite level of knowledge or intent to be found guilty of murdering his wife. *Id*. at 421. As did appellant, Wade testified that when he and his wife began fighting, he "snapped," and the events became a "blur"; Wade claimed to not remember his actions and he denied that he intended to hurt his wife. *Id*. at 421-22. The court overruled Wade's culpability challenge, holding that, despite his claims, a reasonable fact finder could have concluded that Wade "intended to cause serious bodily injury and committed an act clearly dangerous to his wife's life that resulted in her death." Similarly, in the instant case the court could reasonably resolve the evidence to conclude that appellant acted with sufficient culpability to be found guilty of aggravated assault with a deadly

weapon, and we will defer to the court's resolution of credibility determinations. *See Drichas*, 175 S.W.3d at 799.

Based on this record, we conclude that, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have determined that the evidence was sufficient to support the element of culpability required for aggravated assault with a deadly weapon beyond a reasonable doubt. *See id.* at 798. Further, viewing the evidence neutrally and deferring to the trial court's determinations on weight and credibility, it was reasonable for the court to determine that the evidence on the issue of culpability was factually sufficient because the supporting evidence was not too weak, and the controverting evidence was not too strong. *See id.* at 799. Because the evidence was legally and factually sufficient to establish the requisite *mens rea*, appellant's third issue is overruled.

## CONCLUSION

Having overruled each of appellant's three issues, we affirm his conviction on both counts of aggravated assault with a deadly weapon.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   April 6, 2006

Do Not Publish

13